PATRICK FENTON, as Administrator, etc., Respondent, *v.*
THE SECOND AVENUE RAILROAD COMPANY, Appellant.

*Court of Appeals, March 10, 1891.*

Reversing 56 Hun, 99.

1. *Negligence.  Accident.*—A street railway company is not liable for an
    injury due to the party's own carelessness or to pure accident.
2. *Same.  Preference.*—Street railway cars have a preference in the streets;
    and, while they must be managed with care so as not to carelessly in-
    jure persons in the street, pedestrians must, nevertheless, use reason-
    able care to keep out of their way.

Appeal from judgment of the supreme court, general term,
first department, affirming judgment for plaintiff entered
upon verdict.

*Aug. S. Hutchins* and *Waldo Hutchins*, for appellant.

*Wm. M.* and *James M. Lyddy*, for respondent.

EARL, J.—This action was brought by the plaintiff to
recover damages for the death of his son, the intestate,
alleged to have been caused by the carelessness of the defend-
ant on the 7th day of April, 1888.  The material facts are
as follows : The defendant operated its horse railroad through
Second avenue in the city of New York.  Between eleven
and twelve o'clock on the day named one of the defendant's
cars was coming up the avenue, and while it was crossing
East 25th street, the intestate started from the northwest
corner of the street apparently to run diagonally across to
the southeast corner, and when he reached the westerly rail
of the track upon which the car was running he stumbled
and fell on the track in front of the horses, and a portion of

the car passed over him, and he was so injured that he died. He was an intelligent, strong, healthy lad, nearly ten years old and perfectly familiar with the locality, the railroad and its operation.     There was nothing to obstruct his view of the approaching car, which was approaching at the usual rate of speed, the horses attached thereto trotting, and the only carelessness alleged against the defendant is that the driver did not stop the car in time to save the life of the intestate. Two witnesses were called as to the accident on the part of the plaintiff.     The first, Bedles, who at the time was standing near the northeast corner of the street, testified that he saw the car coming, and perceiving the danger to the boy, hallooed to the car; that he saw the boy running, stumble and fall from ten to fifteen feet in front of the horses, and that he hallooed at the time the boy fell; that there were two drivers on the front platform of the car; that they were looking up street and did not apply the brake until the car struck the boy.     The other witness, Barron, was at the southwest corner and testified that he saw the boy look up and down the avenue and start on a run to cross it; that he saw him stumble and fall at the west rail of the track; that he attempted to get up, and before he could do so was struck by the horses, which were about twenty feet away from him when he fell; that he heard the hallooing by Bedles and that the brake was not applied until the horses struck the boy.

On the part of the defendant the two drivers who were on the front platform of the car were called, one of whom was a driver of nine years' experience, who was there to aid or instruct the driver who had first commenced to drive on that day; and they testified that two passengers were with them on the platform; that they did not hear Bedles halloo and did not see the boy until he had fallen in front of the horses, and that then they immediately applied the brake and arrested the motion of the car as soon as possible.     McCandless, who was a passenger on the front platform, testified that he saw the boy run to cross the track and saw him

stumble and fall about ten feet in front of the horses, and that the drivers immediately applied the brake and arrested the movement of the car as soon as possible. Dunham, the other passenger upon the front platform, testified that he saw the boy running from the west side of the street and saw him fall on the track, and that the drivers applied the brake as quick as they could, and that he thought the boy fell about eight feet in front of the horses. It does not appear that either of these passengers heard Bedles halloo.

If it be assumed that the boy fell twenty feet in front of the horses, as testified to by one of the plaintiff's witnesses, then the horses going at the usual rate of speed, assuming it to be six miles an hour, would have reached him in about two seconds, and that was all the time the drivers had to see the peril, apply the brake and arrest the motion of the car before reaching him, and there is no evidence that by the exercise of all the vigilance that the law requires of drivers under such circumstances they could, after the boy had fallen upon the track, have arrested the car in time to save him from injury. If it be assumed that they saw him as he approached the track, they had the same reason to suppose that he would get across that he had ; and he probably would have crossed in front of the horses in safety if he had not fallen. No negligence can be attributed to the drivers because they did not apply the brake before the boy fell, because then, for the first time, the peril commenced and became apparent.

This accident did not happen at a street crossing, but between the upper and lower crossings of the street, and hence the drivers did not have the same reason to expect any one there as at a street crossing.

There was nothing requiring this boy to run across the track at this particular place and time. If he had walked he probably would not have fallen, and if he had waited two or three seconds the car would have passed and he could then have gone over the street in safety. Street railway cars have

a preference in the streets ; and while they must be managed with care so as not to carelessly injure persons in the street, pedestrians must, nevertheless, use reasonable care to keep out of their way. The unfortunate death of this boy was due to his own carelessness, or it was a pure accident, and in either event the defendant cannot be held responsible for it.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.