his diligence and energy, would be within the condemnation of the statute. In either case, if the element of intent is present,—that is, if the contract is entered into for some ulterior purpose, and with the design to defeat or evade the statute in its true intent and meaning,—then, doubtless, it is void; but until that is made to appear (and in this case the onus is upon the defendant to make it so appear) we think it must be treated like any other contract. These views lead us, therefore, to the conclusion that the question of intent of the parties in entering into the agreement in question should have been submitted to the jury, and that the failure to do so was error which renders a reversal of the judgment appealed from necessary.

Judgments of the county court of Cayuga county and of the city of Auburn reversed, with costs. All concur.

---

### BELLO v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

STREET RAILWAYS—INJURY TO PERSON IN STREET—NEGLIGENCE.

Evidence that a boy nine years old, starting to run across a narrow street, in the middle of a block, at a point where there was at least one team, when "it was a little dark," fell on a horsecar track, and received injuries from the horses of an approaching car; that at the time he fell the horses were 25 or 50 feet from him, leaving, as the same witnesses testified, but a second or a tenth of a second for the car to reach him after he fell,—with evidence that the driver was looking to one side, and did not see the boy, and that a car can be stopped in about five feet after application of the brake, is not sufficient to go to the jury on the question of negligence or freedom from negligence. Williams, J., dissenting.

Appeal from superior court of New York City, jury term.

Action by Philippo Bello, administrator of Joseph Bello, deceased, against the Metropolitan Street Railway Company. From a judgment dismissing the complaint, and an order (35 N. Y. Supp. 831) denying a new trial, plaintiff appeals. Affirmed.

This was an action brought by the plaintiff, as administrator of Joseph Bello, deceased, a son, to recover damages for injuries received by said decedent which caused his death, and which plaintiff alleges were due to the negligence of the defendant's servants and employés. At the time of the accident the boy was a bright, intelligent lad, of the age of eight years and ten months. He had attended public schools three years, and, according to his father, he could read the names of streets,—"every name and everything." The accident occurred on Sullivan street, in the middle of the block between Broome and Spring streets, on November 27, 1894, between 5 and 6 o'clock in the evening, when, as testified, "it was a little dark." Sullivan street is narrow, with a grade almost level between Broome and Spring streets, having therein only one car track, which is the north or up track of the Seventh avenue line. The car which ran over the boy was going north, in the direction of Spring street, and, as the manner in which the accident occurred is detailed by only two witnesses, it will avoid any dispute as to the facts if we briefly refer to their testimony, using the language employed by them upon the trial. Anthony F. Cadmore, plaintiff's first witness, testified as follows: "As I was coming up near Spring street, I saw a boy running across the track, and he fell. I hallooed to the driver,—I don't suppose he heard me,—and I ran up to him, and said, 'Boy in under the car.' He stopped, and I said, 'Take your brake up, and shove your car back,' and they

shoved the car back. * * * The street was clear of all obstructions. There was nothing to obstruct any one's view. * * * The boy started from the west side of the street, and was going east. * * * When the boy was at the track, I should judge that the heads of the horses attached to the car were about twenty-five feet from him, and then I called out. I didn't call out exactly at the minute when the horses were yet twenty-five feet from the boy. When I see that he didn't put the brake on, I hallooed out. I hallooed to the driver when the boy was twenty-five feet away from the heads of the horses. * * * The boy was running across the track. When he was twenty-five feet away from the heads of the horses he fell, and was lying across the track, and I suppose he was trying to get up. I saw him fall while he was running from the west side of the street, and he fell on the track. At the time he fell, and when the heads of the horses were still twenty-five feet distant from him, I called out to the driver to stop. * * * I told him there was a boy under the car, and to take off his brake and back up. He got down and took the car back. I don't suppose he knew the boy was there." In addition, he testified that the driver was talking with a man on the east side of him, standing on the platform of the car: "When the driver was talking to a man on the platform, as I have stated, the driver was facing east. He had face turned east. The car was going north. He continued that conversation until the boy was struck. He never knew that they struck him until I hallooed out." Upon cross-examination this witness said: "I didn't take any notice whether there was any wagons between the car and the west pavement or not. * * * I couldn't swear that there was, and couldn't swear there was not. * * * Mr. Frank Spinetti kept a fruit store there. * * * His place is right where this accident happened. Sometimes, in the evening, there is from two to three wagons there, and sometimes there ain't. I couldn't tell you whether there was any wagons there on this particular night or not. * * *" Nor would the witness confirm or deny that, upon the coroner's inquest, he had testified that there were two wagons standing there. He further stated that he was "sure that the boy fell on the track before the horses got to him. He stum-. bled and he fell. When the boy fell, the car, just at the time, was about twenty-five feet away. I don't think it would take a second, or a tenth of a second, before the horses reached him. It was only fifty feet. He could have got away if the driver had put his brake on and seen him. At any rate, he would have had to get up and go away, and get out of the way, before that second or tenth of a second. That is all the time the driver had to stop the car in." Another witness, one Joseph Grante, testified as follows: "I saw the boy cross the street from the west side on the front of the barber shop on the east side of Sullivan street. He was crossing from the west side of Sullivan street towards the east side. * * * I saw the boy fall. He fell in the middle of the street. At that time the horses attached to the car, that was going north, were about 25 feet away. At the time that this boy fell, and when his horses were yet so far distant, the driver was on the front of the car.. He had the reins in his hands, and talked this way, with a gentleman on this side of him. He was not looking ahead. * * * He was looking to the east side of the street. * * * He was not looking in the direction in which the boy fell. I saw the boy fall, and then I saw the horses going, and I heard somebody halloo. * * *" Upon cross-examination he said that he saw the boy running across the street not so fast as a run: "I said the boy was not running fast. He was running a little. He was not walking. I should think there was a wagon before the barber shop. I am sure there was one. There could not have been two or three there. * * * I know there was one there, but I didn't see any other." In addition to these witnesses, the only others examined in plaintiff's behalf were a car driver, who testified that a car could be brought to a full stop, after the application of the brake, in about five feet, and the plaintiff, who gave evidence as to the boy's capacity. At the close of such testimony the complaint was dismissed upon the gound that it had not been shown that the accident occurred solely through the negligence of the defendant. The plaintiff, however, moved for a new trial, which motion was reserved; and in the opinion thereafter written the judge sustained his former ruling, and

denied the motion for a new trial, upon the additional ground that, "even if it is to be assumed from the facts that the defendant was guilty of negligence, it would be an equally fair inference that the deceased was likewise at fault, and that the combined negligence of both led to the accident."

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Henry M. Goldfogle, for appellant.

John T. Little, Jr., for respondent.

O'BRIEN, J.   To recover damages for injuries sustained, in an action of this kind, the burden is upon the plaintiff to prove by a fair preponderance of evidence that the accident occurred solely through the negligence of the defendant, and that the person injured was free from contributory negligence.   Upon the first proposition it is insisted that the evidence shows that the driver of the defendant's car was negligent in not observing the plaintiff's intestate on the track until he was run over; in not heeding the warning to stop the car; in being inattentive to what was happening ahead of him, and in turning his head to the side, loudly talking to some one on the platform; and in not bringing the car to a stop when he had ample opportunity so to do, and could have averted injury to the boy.   If such inferences can be properly drawn from the testimony, then, upon this branch of the case, as to defendant's negligence, there was sufficient to go to the jury.   We think, however, that the plaintiff's counsel overstates the inference so to be drawn.   As said in Reich v. Railway Co., 78 Hun, 418, 28 N. Y. Supp. 1105:

"The motorman * * * had no right to expect or anticipate the fact that this boy was going to cross the track in the middle of the block.   He undoubtedly, under the rules, was required to be more vigilant at the crossing, where he might naturally expect parties to cross the track, than in the middle of the block."

As correctly urged by the respondent, the conduct of the driver prior to the time the boy fell is perfectly immaterial.   If the boy calculated to cross before the car reached him, the driver of the car was entitled to the benefit of that calculation.   He was entitled to assume that the boy would safely cross.   It here appears that the boy, in the middle of the block, at or about the place where there was at least one wagon, darted from the west side of the street, intending to reach the east, and fell in the middle of the track, and was overtaken by the car before he could rise, and was injured, not by the wheels passing over him, but by the horses or platform, or by some of the chains or gearing connected with the brake.   That the car was not going fast is conclusively proved by the fact that, as soon as an intimation was given that the boy was under the car, it was stopped before it had gone many feet.   Considering the intelligence of the witnesses, and their incapacity to measure distances exactly, we think it reasonably certain from their testimony that the car was almost upon the boy at the time he fell, and that, in stating that it would take but a second or a tenth of a second for the car to reach the boy after he fell, the witnesses testified on the question of time more accurately than when they attempted to give their measurements of 25 or 50 feet as the distance between the boy at the time he fell and

the heads of the horses on the car. It is from the moment that the boy fell on the track until the car struck him that the conduct of the driver is material. If, when the boy fell, the car could not possibly have been stopped in time to avert an accident, it is difficult to see upon what theory the negligence of the driver could be predicated. In this respect the plaintiff's testimony was:

"At any rate, he [the boy] would have had to get up and go away, and get out of the way, before that second or tenth of a second. That is all the time the driver had to stop the car in."

Considering the hour, the narrowness of the street, the fact of the presence of at least one wagon at the place where the boy started to cross on a run, and the close proximity of the horses to the boy at the time he fell on the track, which left but a second or a tenth of a second within which the driver must act to avert the injury, and that all the witnesses agree that the car was stopped before the wheels reached the place where the boy was, showing that the car was not going at a very rapid rate, it left the inferences just as consistent with the absence as with the presence of negligence on the part of the driver. If, however, we conclude that there was sufficient to go to the jury upon the question of the negligence of the defendant, the question remains whether the burden was sustained of showing that the plaintiff's intestate was free from contributory negligence. The testimony shows that the boy attempted, with the car close upon him, to cross, in the middle of the block, a narrow street, taking the chances of getting over safely; and having fallen, and thus rendered his calculations unsuccessful, it can hardly be said that sufficient evidence was presented from which the jury could infer that the boy was free from contributory negligence. As said in Reynolds v. Railroad Co., 58 N. Y. 250:

"It belongs to the definition of the cause of action that the injury must have been occasioned solely by the negligence of the defendant; and either by direct proof given by the plaintiff, or from the circumstances attending the injury, the jury must be authorized to find affirmatively that the person injured was free from fault that contributed to the accident, or the action is not maintained. If this element is wanting in a case, the court may nonsuit, or set aside a verdict for, the plaintiff."

And in Hart v. Bridge Co., 84 N. Y. 58, it was said:

"It is not enough to prove facts from which either the conclusion of negligence or the absence of negligence may with equal fairness be drawn."

We think, upon both propositions, relating to the negligence of the defendant, and the freedom from contributory negligence of the decedent, that the inferences as to the presence or absence of negligence were so equally balanced that it cannot be said that the burden which was upon the plaintiff was sustained, and that for this reason the dismissal of the complaint was proper, and the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and INGRAHAM, JJ., concur.

WILLIAMS, J. I dissent on the ground that the questions of negligence and of contributory negligence were for the jury.