(15 App. Div. 408.)

STABENAU v. ATLANTIC AVE. R. CO. OF BROOKLYN.

(Supreme Court, Appellate Division, First Department.　March 5, 1897.)

STREET RAILWAYS—INJURY AT CROSSING—EXERCISING JUDGMENT IN CRITICAL MOMENT.
　　There is no evidence to support a verdict against a street-railway company
　　for injuries to a child struck at a street corner by a car, where the motorman
　　turned off the power before coming in sight of the corner, his view of which
　　was obstructed till within 100 feet, and as soon as he saw the child fall on the
　　track applied the brake so vigorously that the car stopped just as it struck the
　　child, though by reversing the power, instead of using the brake, the car could
　　have been stopped sooner, unless reversing would have resulted in blowing
　　out the fuse, since the motorman in the critical moment was bound only to
　　do what seemed best on the facts as he then saw them.

Appeal from trial term, New York county.

Action by Rosa Ulger Stabenau, an infant, against the Atlantic
Avenue Railroad Company of Brooklyn.　From a judgment for plain-
tiff, defendant appeals.　Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

Eugene Lamb Richards, Jr., and Arthur L. Sherer, for appellant.
Henry B. Johnson, for respondent.

INGRAHAM, J.　The plaintiff was injured by one of the defend-
ant's cars, and the action is brought to recover damages sustained
in consequence of such injury.　The case was submitted to the
jury, who found a verdict for the plaintiff, and we are asked to re-
verse this judgment on the ground that the evidence did not justify
a finding that the accident happened because of the negligence of
the defendant.　The accident happened at a street crossing at New
Utrecht.　The defendant's road approaches this crossing by a curve.
There is a high board fence on the side of the defendant's road as
it rounds this curve, so that the crossing where the plaintiff was in-
jured is invisible from an approaching car until it is quite close to
the side of the street.　As one of the defendant's cars was approach-
ing this crossing at about 7 o'clock on the evening of January 19,
1894, several children attempted to cross the track in front of the
car.　It was a clear night, but with no moon, and was quite dark.
All of the children except the plaintiff crossed the track in safety,
the plaintiff's foot having been caught between the rail and one of
the planks out of which the crossing was constructed so that she
was unable to move.　There is no evidence from which it can be
determined as to what distance the car was away from the plaintiff
at the time her foot was caught.　The car was well under the motor-
man's control, and before the children were in sight the power had
been turned off.　The motorman was at his post, attending to his
duties, and the plaintiff's witnesses say that, as soon as he became
aware of the presence of the plaintiff upon the track, he put on the
brake as hard as he could, attempting to stop the car, which he
succeeded in doing when it had gone but a few inches past the child.
The plaintiff's foot was not run over, the injury being inflicted by
some portion of the car as it passed striking the plaintiff's foot.

It seems to us that this evidence fails to disclose any negligence on the part of the defendant in the performance of any duty which it owed to the plaintiff. When the crossing came in sight, assuming that the car was in the neighborhood of a hundred feet from the crossing, the mere fact that the children were running across the track did not require that the motorman should at once stop the car, as there was ample time for the children to safely cross, in the absence of any unusual accident. This is apparent from the fact that all of the children except the plaintiff crossed in safety. Until the fact that the child's foot was caught in the track became known to the motorman, or until the fact was so apparent that in the exercise of ordinary care he should have known it, or until the car was so close to the child that there was ground for apprehending that the child could not cross the track in safety, it does not seem that it was the duty of the motorman to stop the car. Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967; Lavin v. Railroad Co. (Sup.) 42 N. Y. Supp. 512. As before stated, we can find no evidence to justify a finding that there was any such indication as would impart to the motorman a knowledge of the plaintiff's inability to get out of the way of the car prior to the time the motorman commenced to put on the brake.

Chisholm, who was upon the platform of the car, being then an employé of the defendant, and who was called by the plaintiff, testified that they first saw the plaintiff as the car was coming around the corner. "The car ran, after we first saw the children, and before we saw this little girl fall, I should judge about fifteen feet; something like that." He further testified that when the car was going up towards New Utrecht avenue, "and within about fifty or sixty feet, to the best of my opinion, we seen a lot of children on the crossing. When they seen the car coming they made a run. Maddock started to put on his brakes as hard as he could, and this little child, as she was running across, she fell." There is not the slightest evidence tending to contradict this statement, sworn to by the witness produced by the plaintiff, that as soon as the child was seen crossing the track, and before she fell, or as soon as it appeared that she was in danger, Maddock, the motorman, put on the brake and did what he could to stop the car. It is thus affirmatively shown that, as soon as it appeared that the plaintiff was in any danger, Maddock attempted to stop the car. Is there any evidence here of negligence on the part of Maddock or any one upon the car in failing to do what could be done under the circumstances to avoid the accident? I think not.

It seems that these cars are also furnished with what is called a reverse handle, which it appeared would stop the car quicker than the brake, if using it in that way did not blow out the fuse. Chisholm testified: "In speaking of this reverse handle or reversal handle, a car can be stopped quicker that way; but suppose that you used the controller and the reverse handle suddenly, it is possible that that sometimes blows out the fuse. In other words, you can't tell, when you use that reverse handle suddenly, whether it is going to blow out the fuse or not. Therefore I could not in this case

tell positively, in case I had succeeded in reversing the controller handle, whether that would have blown out the fuse. She is liable to blow out any time if you turn it on suddenly. It is more apt to blow out when you suddenly reverse. I have known that to happen with a sudden reversal. That removes the power in use." When the fact that the plaintiff was in danger was apparent, the motorman had to determine instantly, considering the distance he was from the child, and the nature of the two appliances at hand to stop the car, whether it was better to use the brake or the reverse handle. He determined to use the brake, and did use it, with such success that it stopped the car as it reached the child. It was the duty of the motorman to determine which, under the circumstances, was the best method of stopping the car, and the defendant is not guilty of negligence because of an error of judgment exercised under such circumstances. One of two things had to be done, and even now we cannot say with certainty that if this reverse handle had been used the car would have stopped any sooner than it did. What the motorman was bound to do at this critical moment was to exercise his best judgment in stopping the car immediately upon the appearance of such a condition as would indicate that the child was in danger. If he, under the circumstances, in good faith, considered that it was safer to attempt to use the brake at that time than to adopt any other means, and did use the brake to stop the car, the use of the brake, rather than the other appliance provided for the stopping of the car, was not, under the circumstances here disclosed, evidence of negligence, but the question as to which appliance should be used depended upon the judgment of the motorman, under the circumstances as they appeared at the time. It is evident that, if the brake had been sufficient to stop the car a few feet short of the place at which it was stopped, the brake would have been the more certain method of stopping the car than the reverse handle, but, regard being had to the space within which the car was stopped, it may be said to be somewhat more probable that the use of the reverse handle would have avoided the accident; but we are not justified in requiring of a person placed in a position of this kind, where his judgment had to be exercised in a moment of danger, and where any hesitation in the exercise of such judgment would produce serious consequences, a knowledge of subsequent events and a judgment based thereon. It is by no means clear that in the situation in which the motorman found himself it was not more probable that the car would have been stopped and the accident avoided by the use of the brake rather than by the use of the other appliance. There is no substantial dispute that, when it first became apparent to a person on the car that this child was upon the track in danger, the motorman at once endeavored to stop the car. There is no evidence to show that he was neglecting his duty; that he was not watchful; that he did not see the plaintiff as soon as she could be seen by one in his position; or that there was anything, up to the time that he commenced to put on this brake, that would justify an apprehension of danger to the plaintiff. This case is not unlike the case of Fenton v. Railroad Co., supra.

Under the rule applied there, it is clear that no negligence could be attributed to this motorman:

"If it be assumed that the boy fell twenty feet in front of the horses, as testified to by one of plaintiff's witnesses, then the horses, at the usual rate of speed, assuming it to be six miles an hour, would have reached him in about two seconds, and that was all the time the drivers had to see the peril, apply the brake, and arrest the motion of the car before reaching him; and there is no evidence that, by the exercise of all the vigilance that the law requires of drivers under such circumstances, they could, after the boy had fallen upon the track, have arrested the car in time to save him from injury. If it be assumed that they saw him as he approached the track, they had the same reason to suppose that he would get across that he had, and he probably would have crossed in front of the horses in safety if he had not fallen. No negligence can be attributed to the drivers because they did not apply the brake before the boy fell, because then, for the first time, the peril commenced and became apparent."

This is applicable to the case at bar. These children, running across the track in front of the car, with plenty of time to cross in safety, were in no apparent peril. That peril became apparent for the first time when it appeared that the child's foot had caught in the rail. There could be no negligence in the motorman's not applying the brake or stopping the car until it became apparent that the child could not cross the track in safety. The finding of the jury that the defendant was guilty of negligence was without support, and the complaint should have been dismissed.

The judgment is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.