without placing himself alongside the gate in the immediate vicinity of these horses and trucks, we think the question of plaintiff's negligence was for the jury.

"We are not permitted to guess or assume that the deceased was free from fault because he was injured, or that every person will take care of himself from regard to his own life and safety, for the reason that human experience shows that persons exposed to danger will frequently forego ordinary precautions of safety. It is incumbent upon the plaintiff to show, by a preponderance of evidence, such facts and circumstances as will satisfy the minds of the jurors that the deceased exercised proper care and prudence, and did not omit the precautions of a prudent man under the circumstances. The law demands proof, and not mere surmises." Riordan v. Steamship Co., 124 N. Y. 655, 26 N. E. 1027.

We also think that the court erred in charging the plaintiff's third request, that the defendant "was in duty bound to the plaintiff to use such safeguards in securing the gate as experience has shown to be safe." We do not understand that such a duty was imposed upon the defendant. The defendant was not confined to those appliances which experience has shown to be absolutely safe, but to those appliances which, under the circumstances, would appear to a reasonably prudent man to be a proper appliance to keep the premises in a safe and suitable condition, free from danger from those rightfully using them. To prohibit a person from using any appliances other than those that experience has shown to be absolutely safe would prevent any one in possession of the premises from applying any device or apparatus which had not been used before, the absolute safety of which had not been demonstrated. We do not think that this is a correct statement of the obligation. It follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

All concur except O'BRIEN, J., who dissents.

---

(37 App. Div. 455.)

### DE IOIA v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

STREET RAILROADS—NEGLIGENCE OF DRIVER.
    The failure of the driver of a horse car to observe a boy when he slipped on the track, on a dark night, four feet in front of the horses, at a part of the road not a crossing, does not justify an inference of negligence.
    Rumsey, J., dissenting.

Appeal from trial term, New York county.

Action by Ermengilda de Ioia, as administrator of the goods, chattels, and credits of Francisco de Ioia, deceased, against the Metropolitan Street-Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

S. Livingston Samuels, for appellant.
Charles F. Brown, for respondent.

O'BRIEN, J.  The action was brought to recover damages for injuries resulting in the death of the plaintiff's son through the alleged negligence of the defendant in the operation of one of its horse cars. When the motion was made to dismiss the complaint at the close of the plaintiff's case, the questions presented to the learned trial judge were the same as those which we must consider on this appeal, namely, whether there was sufficient evidence to go to the jury upon the defendant's negligence, and whether the plaintiff's intestate was free from contributory negligence.  In determining them, the plaintiff is entitled to the most favorable inferences to be drawn from the testimony.  Examination thereof shows that the boy was about 10 years of age; that on the evening of May 26, 1897, at about 10 o'clock, he was crossing from the east to the west side of Sullivan street, between Broome and Watts streets, and when he reached the most westerly track, at a point about 20 feet distant from the Watts street crossing, he slipped and fell backwards under the defendant's car, which was then approaching; and that his leg was crushed by the front wheel of the car to such an extent that an amputation was necessary, from the effects of which operation, as the result of shock, he died.  The manner in which the accident occurred is described by the witnesses as follows:

Richard E. Sheehan testified that while standing on Watts street he heard "hollering" a couple of times, and heard the horses being pulled up, and by that time the boy was under the car, and was lying on the west rail, about 20 feet from the crossing; that it was then somewhere between 9 and 10 o'clock at night, and that it was pretty dark there; that the boy was lying across the inner rail of the downtown track, and one leg was lying by the front wheel, and one of his feet was sticking out between the two wheels of the car.

Joseph Frenza, 14 years of age, testified: That on the night in question he was with the deceased before the accident on Watts street, and that together they proceeded to Sullivan street.  That he got to the opposite side of Sullivan street first, and then turned around and looked, and saw the boy, Ioia, starting to cross, and that when walking over he slipped and fell, and thereafter the car went over him.  That—

"The horses on that car was distant from this boy, when I saw him slip and fall, four or five feet.  The horses were being driven not fast, and not slow. When I saw the boy fall, I turned and looked back, and there he was under the car.  I said to the driver: 'Stop! there is a little boy under the car!'  I said that before the boy was under the wheel.  When I called to the driver, * * * I don't know if he was talking or not.  The driver did nothing towards stopping the car when I called to him."

That the driver did not put on the brake.  That when the boy slipped and fell he fell on his back, and that before he fell he was walking. Upon cross-examination the witness further testified that the boy slipped and fell upon reaching the westerly rail, and, as to the conduct of the driver, said:

"I saw the driver put on his brake.  The front wheel did not run over Frank.  It ran up against him; * * * right on top of him."

The next witness, Calde, testified:

"When I saw the boys going down from the sidewalk to the middle of the street, this car was near the corner. It may have been ten feet from the car to the boy,—ten or twelve, I can't tell exactly. * * * I saw the boy when he was on the track, before he was run over,—when he was just beginning to cross the track. * * * When I saw the boy standing on the track, the car was from him at that time about ten feet. * * * The car was going * * * the regular, ordinary gait. * * * I heard a cry. That was the first thing I knew of any accident. I did not see the boy slip."

Manfredi, another witness, testified:

"I was on the corner, * * * and the car was coming down, and three boys was going across from Watts street to Sullivan street, and one boy * * * fell down. * * * He fell right in the middle of the track, about on the second rail; * * * the rail next to the west rail. I can't tell where the car was when he fell; about nine or ten feet,—eight feet. I can't tell. The horses were about eight or ten feet—about nine or ten feet—from the boy. * * * When the boy slipped and fell, I seen the driver driving the horses. When the boy fell, he went ahead with the car. He did nothing with the brake. I did not see him try to stop the car before he got to the boy. The car was going ahead. We found him under the front wheel. * * * The car was coming like it always goes,—the ordinary gait. * * * The wheel did not pass over the boy's leg. * * * It was on top of the leg."

In addition to this evidence there was that given by two drivers, who testified as experts that a car could be stopped on a level track within 6 feet; that the average horse, from the collar to the tip of his tail, is 5 feet, and that from the horses to the dashboard is about 4 feet,—altogether 15 feet from the front of the horses to the rim of the wheel; and this, with the father's testimony that the boy was bright, intelligent, and healthy, and that he went to school, and also helped him in his business of selling fruit, concluded the plaintiff's evidence. It appears that the witnesses, in giving the distances at the time the boy fell, were speaking, some of the distance from the horses, and some with respect to the distance from the boy to the car. The fair inference is that the deceased fell on the track 4 or 5 feet in front of the horses, and it clearly appears that the car was stopped before the front wheel had passed over the boy's leg. There would be no possible hypothesis upon which the theory of the driver's negligence could be urged or predicated, were it not for the fact that the car was more than 6 feet away from the boy when he fell, and therefore, by the testimony of the drivers, could have been stopped before it reached him, coupled with the testimony of one witness that the driver, at the moment the boy fell, had his head turned to the right, talking to some one, from which it is claimed that the inference is to be drawn that, if the driver had not been so engaged, he would have seen the boy. But to say that the driver was guilty of negligence, upon the facts appearing, we must go to the extent of holding that under any and all circumstances the driver should never speak to any one on his car, that he must have his attention directed to the front, and that his failure, even in the nighttime, to see a boy who falls more than 6 feet in front of his car, constitutes negligence on his part. There is authority for holding that the driver is obliged to be alert and watchful at crossings, but we think it would be extending the rule beyond any former decisions to hold that the same degree of care is to be observed at every point of the route. It must be remembered, moreover, that this accident occurred at night, and it

was testified by one of the witnesses that it was dark at the place where the boy fell. There is no suggestion, nor can it be inferred, that the driver was aware of the boy's presence on the track till he was under the car, and too close to the wheel to avert the accident, or that the driver saw the boy, or could anticipate that the boy was on the track at that point. If the driver is to be charged with negligence, we are bound to hold that it was his duty, at a place on the route which was not a crossing, and which was dark, to have his attention directed to the front, and that he should have seen the boy fall while he was crossing the track, about 4 feet in front of the horses, and been able, by checking the car, to avert the accident. In other words, we should be obliged to hold that the failure of the driver to observe the boy when he slipped on the track in the night, 4 feet in front of the horses, at a part of the route not a crossing, justifies the inference of negligence. That this is a more rigid rule than has been applied in former decisions is shown by Bello v. Railway Co., 2 App. Div. 313, 37 N. Y. Supp. 969, where an accident happened within a block of where this one occurred, between 5 and 6 o'clock at night, when it was only a little dark, and it appeared that the boy was on the track, where the heads of the horses were 25 feet from him, and where, as here, it appeared that the driver was talking to a man on the platform. In the opinion in that case it was stated that:

"Considering * * * the close proximity of the horses to the boy at the time he fell on the track, which left but a second or a tenth of a second within which the driver must act to avert the injury, * * * it left the inferences just as consistent with the absence as with the presence of negligence on the part of the driver."

And the court of appeals held in Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967, that where a boy, in crossing the street in the daytime, fell when 20 feet in front of an approaching car, and was injured, the defendant was not negligent. See, also, Reich v. Railway Co., 78 Hun, 417, 28 N. Y. Supp. 1105; Stabenau v. Railroad Co., 15 App. Div. 408, 44 N. Y. Supp. 36; Lavin v. Railroad Co., 12 App. Div. 381, 42 N. Y. Supp. 512; and Wendell v. Railroad Co., 91 N. Y. 420. Most of these cases are authorities, also, for the additional proposition that where, as in this case, the boy was sui juris, his attempt to cross the track, after dark, and above the crossing, in front of an approaching car, not more than 10 feet distant, going at the usual rate of speed, was such negligence as would prevent recovery.

We think that the disposition made by the learned trial judge was right, and that the judgment should be affirmed, with costs. All concur, except RUMSEY, J., dissenting.