MARY LORTZ, as Administratrix, etc., of FREDERICK LORTZ, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — crossing a railroad track obscured by smoke.*

A person who attempts to cross the tracks of a steam railway, although he observes smoke upon the tracks left by a locomotive which has just passed over the same which prevents him from observing an approaching train, is guilty of such contributory negligence as to preclude a recovery by his administratrix of the damages resulting from his death, caused by his being run down by a train upon such crossing; it is the duty of a person in such a case to await the disappearance of the smoke before attempting to cross the tracks.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Genesee on the 6th day of January, 1894, upon the verdict of a jury rendered after a trial at the Genesee Circuit, and also from an order entered in said clerk's office on the 21st day of July,

1894, denying the defendant's motion for a new trial made upon the minutes.

*Albert H. Harris,* for the appellant.

*William C. Watson,* for the respondent.

LEWIS, J.:

This action was brought by the plaintiff as administratrix to recover damages sustained by the next of kin by the death of her husband, Frederick Lortz. Lortz was killed while attempting to cross the defendant's track in the village of Batavia, by coming in collision with one of defendant's locomotives.

We assume, in disposing of this appeal, that the jury was justified in finding that the defendant's negligence caused the death of the deceased. Whether the deceased was shown to be free from negligence contributing to his death is the serious question in the case. The defendant's road runs in an easterly and westerly direction through the village of Batavia. It crosses Cedar street at grade. Cedar street forms the easterly boundary of the village. The defendant's tracks cross it at right angles. There are five tracks at the crossing, four main tracks and a branch which is the northerly track. The tracks are numbered from the south, 1, 2, 3 and 4. No. 1 is for the east-bound passenger trains; No. 2 for the west-bound passenger trains; Nos. 3 and 4 are for freight trains. The tracks for a quarter of a mile east and for more than 100 rods west of this crossing are straight, and there is nothing to obstruct or interfere with the view of a foot traveler approaching the crossing from the south after he reaches a point ten feet from the south track, for the distance mentioned, in either direction. The decedent's residence was upon Cedar street, a few rods north of the defendant's road, and his place of business was upon the same street south of the tracks. He was on his way home from his place of business at about six-thirty o'clock in the evening of April 16, 1889. When he reached a point about nine or ten feet from track No. 1, a passenger train ran across Cedar street to the west on track No. 2. The deceased stopped some eight or ten feet south of track No. 1 until this west-bound train had crossed the street, and there was evidence tending to show that he then turned his head to the east

and to the west, as if to see if there was anything approaching the crossing, and he then started northerly and just as he stepped upon track No. 1 he was struck by a locomotive going easterly on said track at a speed of about forty miles an hour. The locomotive was drawing a train of cars and its headlight was burning. The deceased was instantly killed. It was a damp, cloudy night. Witnesses described the clouds as being black. The west-bound locomotive mentioned, as it crossed Cedar street, threw out a dense volume of smoke, which settled down upon the railroad tracks just west of Cedar street. The smoke came close to the ground and was about as high as a man's head. There was nothing in the evidence tending to show that there was anything but the smoke that prevented the deceased from seeing the train coming from the west from the point where he was standing. He was very familiar with the crossing and the surroundings, as he had lived just north of the crossing for many years, and was accustomed daily to pass over the defendant's tracks upon Cedar street. Whether he in fact did look to the east or west before attempting to cross the tracks was a controverted question upon the trial. The deceased's daughter, who was standing, at the time of the accident, in Cedar street, north of the railroad tracks, some ten or fifteen rods from her father, testified that she saw him standing just south of the tracks after the west-bound train had passed, and that he turned his head in both directions before he stepped upon the track.

Several witnesses called by the defendant testified that they observed him and that he did not look either east or west before attempting to cross the tracks. There was some evidence which it is claimed by the plaintiff tended to show that the deceased's eyesight was somewhat defective. This evidence was given by the plaintiff. She testified that her husband's eyesight was defective ; that he could not see anybody very far off; that he could not see very good far off. When asked to give her reason for the opinion that he could not see at a distance she replied that he told her he could not. When asked to state any circumstance which led her to think that he could not see at a distance, she replied that they were once standing in the street and that she pointed out to him some houses that she could see, and that he could not see so far or as

plainly as she could ; and she testified that that was the only circumstance that she could remember from which she inferred that he could not see as far as she could. She testified that he caught cold in his eyes and that water ran out of them. When asked to state how far distant the houses were that the deceased attempted to see, she replied that she did not know. She testified that the deceased was obliged to use eye-glasses to read. He was sixty-two years old at the time of his death. Whether his eyesight was proved to be more defective than is usual with persons of that age is doubtful. It is a matter of common knowledge that there is a difference in the ability of persons to see at a distance. It cannot be fairly claimed from the evidence that there was such a defect in the decedent's eyesight as prevented him from seeing the smoke which was upon the track. There is nothing in the evidence which would justify the inference that the defect in the decedent's eyesight had anything to do with the accident. If there was a cloud of smoke upon the track as described by plaintiff's witnesses, and we assume there was, the deceased was able to see it had he looked in that direction. The train was some ten to fifteen minutes late.

We think that no other conclusion is deducible from the evidence than that the deceased was standing as described near the south track waiting for the west-bound train to pass Cedar street, and then either attempted to cross the track without looking in either direction, or if he looked to the west he saw the smoke upon the track, and without waiting for it to pass away, attempted to cross without being able to see because of the smoke whether the train was approaching. We do not think the jury was justified, under the evidence, in coming to any other conclusion, and such being the case, under the well-settled law of our State, he must be held to have been guilty of such contributory negligence as to prevent the plaintiff from recovering.

The facts in *Heaney* v. *L. I. R. R. Co.* (112 N. Y. 125) are very similar to the facts of this case. The deceased in that case attempted to cross the defendant's railroad tracks in the city of Brooklyn about six o'clock in the morning. The weather was cloudy and drizzly. The train had just passed on the track nearest to the deceased as he attempted to cross, and the smoke from the engine settled down upon the road so as to temporarily obscure

objects in the line of his vision. He was about sixty-six years of age and his hearing was somewhat impaired. He was killed by a passing train, the approach of which was obscured by smoke upon the track. It was held that it was the unquestioned duty of the deceased to wait for the disappearance of the smoke before he attempted to cross the track, and that his neglect to do so was negligence which prevented a recovery. It is stated in the opinion that "If it was a body (referring to the smoke) perceivable, as contrasted with other objects, it was to a greater or lesser extent an obstruction or embarrassment to the vision, * * * thus, to say that the deceased may not have known that the smoke was an obstruction involves the proposition that he may not have been conscious of the appearance of a condition of the atmosphere distinguishable from its other or usual conditions, which is so unreasonable that habit disables us from understanding it."

The doctrine of this case we do not understand to have been at all disturbed by the later case of *McNamara* v. *N. Y. C. & H. R. R. R. Co.* (136 N. Y. 650). The decision in the latter case was placed upon the ground that the jury may have found from the evidence that it was a curve in the line of the road that prevented the deceased from seeing the approaching locomotive and not the presence of the smoke. The accident of Lortz occurred from fifteen to thirty minutes before sunset. If the smoke upon the track was as dense as the plaintiff's evidence tends to show it to have been, it is very improbable that the deceased would have failed to see it had he looked in that direction.

The plaintiff failed to show that the deceased was free from negligence contributing to his death, and hence failed to make a case entitling her to recover.

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, costs to abide the event.