ants, or that adequate protection against the danger of such falling had been provided.

In the case of Reilly v. Construction Co., 83 Hun, 196, 31 N. Y. Supp. 618, where a brick fell from the upper story of a building·in the course of construction, and injured a workman below, it was shown that employés of the defendant, and no others, were engaged in moving a derrick above the floor where the plaintiff was; and it was held that a direction of a verdict for the defendant at the close of all the evidence was error, the court saying:

"From the facts established by the evidence, and from the circumstances surrounding the occurrence, the rational conclusion seems to be that the defendant's men, in moving the derrick, caused it to impinge against the pile of brick, and that such impingement displaced the bricks, and precipitated them into the cellar, upon the head of the plaintiff, and inflicted the injuries for which he seeks compensation in this action. The circumstances are inconsistent with any other hypothesis, and the falling of the bricks can be accounted for upon no other theory. Even, however, if different minds might reach diverse conclusions, and a jury may draw a different inference, the case is yet a proper one for the determination of a jury."

This decision proceeded upon the same theory as the case of Poulsen v. Railroad Co., supra, that the defendant was put to his proof that the fall of the brick was not occasioned by its negligence. Upon a subsequent trial of the action, evidence was given by a witness who saw the derrick strike the pile of brick, and knock it down, and a verdict for the plaintiff was affirmed by this court. 3 App. Div. 363.

We think, therefore, that the dismissal of the complaint was error, for which the judgment must be reversed. All concur.

(18 App. Div. 452.)

VAHUE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

One who walks upon the tracks of a railroad, at a highway crossing, when they are so obscured by smoke from a train just passed that nothing can be seen for some distance from the crossing, is guilty of such contributory negligence as to bar a recovery for an injury received by being struck by a train on the crossing. Ward, J., dissenting, on the ground that the question was for the jury.

Action by Della Vahue against the New York Central & Hudson River Railroad Company.

Action to recover for alleged personal injuries caused by being struck with an engine on the defendant's road moving westerly on track No. 2, at Childs street, in the westerly portion of the city of Rochester, on the 14th day of August, 1892, at about 10 p. m. At the close of the evidence plaintiff was nonsuited, the defendant having made a motion therefor on the ground that the evidence failed to show that the accident was caused by the negligence of the defendant, and also upon the ground that she has failed to show that her own negligence did not contribute to the injuries. The plaintiff took an exception. The plaintiff asked "to go to the jury, and have their verdict on the question as to whether or not the plaintiff used due ordinary care and caution under the circumstances in proceeding across this crossing at the time she was hurt; also upon the question as to whether or not the defendant was negligent in running its train, which did this damage to the person of this plaintiff in the manner as described,

in a negligent manner; also upon all the issues in the case." The requests were denied, and the plaintiff took an exception as to each. The exceptions were ordered heard in this court in the first instance. Overruled.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frank Cummings and W. H. Davis, for plaintiff.
Albert H. Harris, for defendant.

HARDIN, P. J. On the night that plaintiff received the injuries complained of she had been visiting at the house of Mrs. Melville on the east side of Childs street, south of the defendant's tracks, and she started to go northerly on the easterly side of Childs street, in company with a Mr. Smith. Before reaching the Central tracks, she was required to cross a switch of the Buffalo, Rochester & Pittsburg road, and she testifies that after passing the main track of that road, as she was approaching the Central, she stood long enough to look up and down the tracks before she advanced, and as she approached the tracks of the defendant's road she discovered there was a freight train approaching from the west, and that the engine of that train was emitting large clouds of smoke, and that she stopped and waited for the freight train to pass the Childs street crossing. She testifies, viz.:

"I looked on the Central tracks, and noticed there was smoke coming from the freight engine, covering the Central tracks. I think the freight engine at that time was very near to, or had crossed, York street to the east, and the smoke from the engine was falling down over the track, covering the tracks, falling to the ground. It extended up as high as the freight cars. * * * When I last looked to the east, I was just about to leave track 2, or had just left it. Did not stop to look; simply slackened. When I last looked east, I saw a big bank of smoke coming from the freight train, so dense that I could not see through it on track 2. It was as high up as the cars, and covered the Central tracks east of the crossing. As I looked east at that time, the smoke obscured the view of No. 2 Central track, but did not obstruct the view to the east of the other tracks south; not so dense but that I could have seen any trains coming on those south tracks. The further south you got the less dense the smoke was. * * * When I last looked to the east, except that bank of smoke, I saw only the freight train."

In the course of her cross-examination she says:

"The bank of smoke was then to the north of me, and I, standing to the south of it, and looking to the east, could see a train coming on track 2 if the train was down to the east of the east end of the cloud bank. The cloud bank covered all the Central tracks except track 1, but didn't cover track 1 so but that I could see. It covered the other tracks so I couldn't see straight ahead of me and right to the east,—that is, through the smoke,—but I could see ahead of it from the point where I was standing. When I stood south of the tracks, I could see along the south edge of the bank, and see a train to the east, because the smoke was following along the train, and settling over tracks 2 and 3."

She was examined preliminary to the trial before a referee, and, when giving her testimony, the following occurred:

"Q. This question was also asked you: 'Then, as I understand you, when you were crossing the Central tracks, and looked to the east, you looked right into this bank of smoke? A. Yes, sir. Q. And every time you looked east you did that, did you,—that is, looked east along the Central tracks? A. Yes, sir.' Q. Is that correct? A. Yes; only I mean that on track No. 1 the smoke wasn't

so dense. It was, more dense on tracks 2 and 3, where it settled from the engine, and extended from close to the crossing over tracks 2 and 3, down as far as the engine of the freight going east. * * * But between the east end of the bank of smoke and Childs street, track 2 was covered by smoke."

Her companion, Smith, was called as a witness in her behalf, and in the course of his testimony detailing the circumstances of their approaching the tracks he says:

"When the freight was passing over the crossing, thick smoke was coming from the locomotive, and was falling to the ground. Seemed to stay right along by this freight, covering the first couple of tracks a little way down. The bank of smoke was a little way down from the Childs street crossing. Could not tell just how far. I could not see through that bank of smoke. It was not of the same density near the crossing that it was further down. It was quite a ways down before it got so dense one could not look through it. When the train struck plaintiff, she was to the right of me, and the passenger train struck her in the back somewhere, and knocked her down, face downward, and the blow of her knocked me onto my knees."

In the course of his cross-examination he stated that the smoke was higher than his head, and added:

"As it came more towards Childs street, it came down lower, and when it got up by the engine it was as high as the crossing, and laid along those tracks black and heavy. * * * I was not aware of the approach of the train that struck Miss Vahue until it struck her. As I approached the freight train, its noise grew louder. That made more noise when I got on No. 2 track. I looked constantly all the way across the track, first one way, and then the other. When I looked west, I could see all the tracks, and when I looked east I could see this bank of smoke, and when I looked north I could see this freight running over the crossing, and those were all the things I did see."

In the course of the evidence delivered by the plaintiff before the referee, which was read upon the trial of this action, she stated:

"I noticed this smoke coming from this freight engine, and going to the ground toward the south. It settled over the Central tracks; over all of them. It settled down over track No. 2; down close to the ground. I don't know how high up it reached. It came up high enough to interfere with my sight; higher than my head. As I walked over the track, I noticed smoke; I smelled smoke. There was a bank of smoke to the east of this crossing, coming from the freight train, hanging over the tracks there, and falling down to the ground, and up as high as my head. It was hiding all the tracks to the east. I noticed that before I got to the Rochester & Pittsburg tracks, and before I went onto the Central tracks. I saw it down there so thick as to interfere with my view. There was smoke to the west of the crossing also, so that the whole crossing was invisible from smoke from this freight train, at the time I crossed over. The smoke interfered with my view of the train that struck me. I saw that smoke there as I went onto the track, and when I looked to the east first I saw the smoke there hanging over the tracks. It hung over the tracks so you couldn't see the tracks, and couldn't see what was coming on them. That smoke hung in such a heavy cloud over the tracks all the time from the time that I first went onto the Rochester & Pittsburg track until I was struck. The smoke east of me was so dense I couldn't see a train coming. I couldn't see the headlight of a locomotive. I knew it was as dense as all that, and I realized it at the time. * * * I mean to say that the smoke from this freight settled down on the New York Central tracks east of the crossing, and covered all of them except the one that the freight was running on. That was running on the north track, and there were three Central tracks to the south of that. I say that the smoke of that engine settled over all of those three tracks to the south of the north track, and was so dense that I could not see through it to the east of the crossing. That smoke went as far to the east as the engine of the freight. I mean to say that at the time I undertook to cross there was a mass of smoke over all those tracks from the crossing way down where the

engine was. There was no smoke on the crossing itself. The smoke was not so dense right at the crossing as it was east of it. At the crossing you could see right straight ahead looking north, but you could not see to the east along any of the New York Central tracks."

Some other circumstances are mentioned in the testimony descriptive of the situation at the time the engine, coming on the track from the east, came in collision with the plaintiff, and caused the injuries of which she complains. Mr. Titus, an engineer, testified that "the Central tracks east of the crossing are straight until you get down as far as York street," and that the distance from the east line of Childs street to the west line of York street is 310 feet. Some other circumstances and some further evidence were given by the plaintiff and by Mr. Smith. Recognizing the rule that the plaintiff, having been nonsuited, is entitled to the benefit of the most favorable view that may be taken of any of the evidence, and of such inferences as may be legitimately drawn therefrom, we are of the opinion that the plaintiff failed to establish that she was free from contributory negligence on the occasion of receiving the injuries of which she complains. It is quite evident that if the jury had been permitted to find, upon the evidence given by the plaintiff, a verdict in her behalf, it would have been the duty of the court to set the verdict aside as against evidence. It was incumbent upon the plaintiff to show, and she had the burden of satisfactorily establishing, that she was free from contributory negligence. When approaching the tracks of the defendant, and finding that her vision was interfered with by the smoke, as described in the evidence, it was her duty to have remained off of the tracks until the smoke lifted and she had a clear sky in which to apprehend the approach of trains from either direction. Instead of performing that duty, she seems to have been either so much occupied with her friend, or for other reasons to have been careless and negligent. It is quite well settled that parties finding the tracks covered with smoke from the passing engine are required to omit to venture into it, and take the chances of its obscuring the correct vision. Heaney v. Railroad Co., 112 N. Y. 122, 19 N. E. 422; Lortz v. Railroad Co., 83 Hun, 271, 31 N. Y. Supp. 1033; Whalen v. Railroad Co., 40 N. Y. St. Rep. 566, 15 N. Y. Supp. 941; Foran v. Railroad Co., 64 Hun, 510, 19 N. Y. Supp. 417. Our attention is called by the appellant to Beisiegel v. Railroad Co., 34 N. Y. 622. That case, in its facts, differs essentially from the case at bar. Porter, J., in his opinion, at page 632, says: "The proof is clear, not only that he was free from negligence, but that he exercised more circumspection and care than most men would, under similar circumstances." We cannot say that the plaintiff in this case exercised such care and caution. Had she done so, she would not have been injured. We think the nonsuit was properly granted, and the exceptions thereto present no error.

Plaintiff's exceptions overruled. Motion for a new trial denied, and judgment ordered for the defendant on the verdict, with costs. All concur, except WARD, J., who dissents on the ground that the question of contributory negligence was for the jury.