man at work at this pit is to be regarded in the light of a fellow servant. If the plaintiff's testimony is true, the case stands upon the negligence of the master himself. It was he who ordered the plaintiff upon the work, and when he gave that order he took the responsibility connected with the omission to do that particular act for the safety of the servant which the servant had the right to rely upon as having been done before he was put to work. In that aspect of the case, we think it should have gone to the jury on the disputed question of fact as to whether or not the preliminary examination of the rock, after the blast, had been made.

The exceptions should be sustained, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

(22 Misc. Rep. 73.)

## MIXSELL v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Trial Term, New York County. December, 1897.)

1. INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER.

In an action to recover for the death of plaintiff's intestate while crossing defendant's four-track railroad at a place not provided for public use, though such use was permitted, and at about the time for the incoming of two trains, one of which would pass, without stopping, at a high rate of speed, it appeared that decedent was familiar with such facts; that the train by which he was struck could not have been more than 20 or 30 rods away when he was supposed to have looked in its direction; that, but for smoke, it could have been seen for nearly a mile from any point opposite him; and that his failure to notice such train was evidently due to the fact that it was hidden by the smoke of the other train, which came in ahead on another track. *Held* to affirmatively show a want of ordinary prudence on his part.

2. PRACTICE ON SETTING ASIDE VERDICT—DISMISSING COMPLAINT.

Under Code Civ. Proc. § 1187, as amended in 1895, allowing the court to submit to the jury special questions of fact, and the assessment of damages, pending a motion to dismiss the complaint or to direct a verdict, the court, on setting aside the verdict, where it was for plaintiff, may also dismiss the complaint.

Action by Emily Mixsell, as administratrix, etc., against the New York, New Haven & Hartford Railroad Company, in which there was a verdict for plaintiff. On motion to set aside the verdict, and for a new trial. At the argument, defendant also asked that the complaint be dismissed.

Charles Strauss, for plaintiff.
Henry W. Taft, for defendant.

RUSSELL, J. The plaintiff recovered, by verdict of a jury, $30,000 for the negligent killing of her deceased husband, Dr. Mixsell. The motion to set aside the verdict, dismiss the complaint, or award a new trial brings up interesting questions, under the present practice, as to the effect of special findings by a jury in a common-law case, considered in connection with the evidence as applied to the contributory negligence of the deceased. Those special findings were taken under

the amendment of 1895, allowing the court to submit to the jury such questions of fact, and the assessment of damages, pending a motion to dismiss the complaint or to direct a verdict.    Code Civ. Proc. § 1187.

The accident occurred at the town of Mamaroneck, near New York City, on the tracks of the defendant, and was caused by an express train coming to New York, running at the rate of 35 to 40 miles an hour.    It was the last day in October, 1896, and was neither bright nor unusually cloudy.    Dr. Mixsell was hurrying to catch the accommodation train for New York, scheduled to leave at 10:31 a. m., about which time the express train, running in the same direction, was accustomed to pass without stopping.    The accommodation ran on the fourth or northerly track, and the express on the third, being the one next to the track for the accommodation train.    The main station was on the northerly side, with only a waiting room on the other side. One street from the village to the station passed under the tracks about a third of a mile from the station, but passengers desiring to take the trains on the northerly tracks were accustomed, when it was more convenient to do so, to approach the railroad tracks by a path by the side of the street from the end of the walk up to the railroad tracks, and there cross the four tracks, although there was no planking for that purpose, and the track beds were raised and filled to the height of eight or ten inches by crushed stone or gravel.    This method of crossing had been permitted by the railroad company without objection.    Dr. Mixsell had been a prominent physician at Mamaroneck for many years, and was well acquainted with the situation of the tracks, and the arrival and departure of the trains; the schedule of the express and accommodation trains being the same as it had been for a long time.    Evidently intending to go to New York, he stopped on his way to the station to see a patient, and arrived at the platform very near the time when the accommodation train pulled in.    He passed westerly outside of the track and the railroad fences, which for some 600 feet prevented a direct crossing from the waiting room to the station to the place where he could clear the fences, and where frequently passengers had been accustomed to cross the tracks.    One witness saw him stop some six or seven feet from the first track, turn his face in each direction, and then proceed to cross the tracks. He was struck by the express train on the third track, and killed. There was no obstruction whatever to his sight of this express train, unless it was hidden from view by the smoke or vapor of the accommodation train on the north track, pulling in ahead of the express. There was a straight view of about a mile to the east, so that, if the express was seen by the deceased at such a distance, he had ample time to cross the tracks and get to the station, and, but for the vapor, if the express train were closer by, easy power of sight to judge of the distance, and refrain from crossing if danger was apparent.    There was no flagman stationed at or near the place where Dr. Mixsell crossed, and proof was given of the rate of speed of the express train, and of the existence of vapor and smoke proceeding from the accommodation train, and also negative testimony of the want of ringing the bell or sounding the whistle on the locomotive of the express train.

These subjects of proof were understood by the court to be the grounds of negligence urged to justify a jury in finding that the defendant was negligent, and that such negligence caused the death of Dr. Mixsell. The proof on the subject of the want of ringing the bell, and of the running of the express train in the smoke, was somewhat intensified by the evidence given on behalf of the defendant; the testimony indicating that the express train ran nearly half a mile in the cover of the smoke and vapor, so that, as the engineer testified, he could see only eight or ten feet ahead of him. I think the evidence was fully sufficient to justify the jury in finding the defendant guilty of negligence as they did so find. But, as some of the facts proven which tended to show the negligence of the defendant also bore directly upon the question of the contributory negligence of the deceased, the court deemed it advisable to take the special findings of the jury upon specific questions of fact, as well as the assessment of damages, in order that a final disposition of the case might be made, in one direction or the other, upon the suspended motion of the defendant to dismiss the complaint or direct a verdict for the defendant. The object of the amendment giving this power to the court was evidently to avoid the necessity of new trials, and allow the courts at nisi prius, and on appeal, to direct a judgment for the plaintiff for the amount found by the jury to be the damages, or for the defendant, by the dismissal of the complaint or the direction of a verdict. It was also deemed a proper case to test the method by which the jury followed the direction of the court to analyze the leading facts upon which negligence of the defendant or the deceased might be predicated. In every charge in negligence cases the jury is instructed as to what matters may be facts indicating negligence of one party or the other, and to apply the evidence to the solution of those facts. The answers to the 13 questions submitted in this case indicate how the jury in this particular action did so apply the evidence, and conclude as to the facts to be found upon the testimony, in arriving at their broader finding of negligence of the defendant, and want of contributory negligence of the deceased. The questions and answers of the jury are as follows:

"First. Was the crossing used by the deceased a dangerous one? A. Yes. Second. If so, was it so known to the deceased? A. No. Third. If so, was it so known to the defendant? A. No. Fourth. Was a warning given by the ringing of the bell on the locomotive of the express train? A. No. Fifth. Could the deceased have heard the ringing of the bell on such locomotive? A. Yes. Sixth. Did the smoke obscure the view of the deceased of the approach of the express train? A. No. Seventh. Was the express train running at a dangerous rate of speed? A. Yes. Eighth. Did the deceased know that this express train was accustomed to run at a fast rate of speed? A. Yes. Ninth. Did the engineer have the right to suppose, from the facts of the situation, that no person knowing the probable passage of the express train would cross the tracks? A. No. Tenth. Did the deceased look and listen at the right time to ascertain if the express train was coming? A. Yes. Eleventh. Was the defendant guilty of negligence causing the death of deceased? A. Yes. Twelfth. Was the deceased guilty of any negligence which contributed to the accident? A. No. Thirteenth. How much is a fair and just compensation for the pecuniary injuries resulting from the death of Dr. Mixsell to the widow and next of kin,—how much do you assess such damages? A. Thirty thousand dollars."

The court thereupon denied the motion to dismiss the complaint and to direct a verdict for the defendant, giving the defendant an exception. In order that the jury might be discharged, and to give counsel a better opportunity to present the legal questions (the motion to set aside the verdict and for a new trial being made in due time), the court directed the entry of the general verdict in favor of the plaintiff for the sum of $30,000 upon the findings of the jury. The counsel for the defendant moved to set aside the verdict and for a new trial; moving as to each specific finding, as well as to the general verdict. · At the opening of the subsequent argument the counsel for the defendant, in addition to his former motion, asked, also, that the complaint be dismissed.

In the view taken by this court, it is unnecessary to consider the question of the negligence of the defendant. Assuming that there was sufficient evidence upon which the jury could find in favor of the plaintiff on that question, the weight of such finding bears all the more strongly upon the question of contributory negligence. The deceased was fully aware that 'he was approaching a place of danger; for, independent of his prior knowledge of the situation and the trains, the four-track railroad which he was intending to cross was itself a warning. Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85. Added to the visible danger was that known to the deceased from the incoming of two trains about the time he was to be on the track, one of which would stop at the station, and the other would fly by at a fast rate of speed. The jury has so found in answer to the eighth question of fact presented to them. Assuming that he faced each way in his gaze before he entered upon the track at all, the duty of using the eyes was not limited to that moment of time. He had 34 feet to pass before he came upon the express track, knowing that the moment was about the time, within 60 seconds either way, when that express train was likely to go by. If there was no vapor or smoke at the time he looked, he could see the express train at any point from that opposite him to nearly a mile away. If there was no smoke or vapor, and he looked in the direction from which the express train would come, he certainly saw it; and, if he did see it, no notice of its approach was necessary. It might also be said that no notice or warning of its approach would be necessary to one who knew that it was due at about that time, if, by the use of sight, the train could be seen. From the fact of collision, it is indisputable that the train could have been only 20 or 30 rods away when he is supposed to have looked, if he proceeded directly across the track; for, at the gait of walking, the time he took to go some 34 feet would have enabled the express train to pass over the tracks 8 to 12 times as far. The collision being a certain fact, it is equally as certain that the train could not have been other than within easy eyesight at the time he is supposed to have looked. If he took the situation in, seeing the train, and supposed that he could pass over before it reached him, he was taking upon himself the chances, and a risk not within ordinary prudence. With no obstruction to his eyesight, the fact of his sight of the train is certain, if he looked in that direction; and the fact is also equally certain that he determined to cross ahead of it while it was coming, as he knew, accord-

ing to the finding of the jury and the evidence, at a fast rate of speed. The only  ther solution, from the facts, possible, and one which is preferable, because it is the more probable, notwithstanding the finding of the jury, and because it was perhaps conclusively established by the evidence, is that the express train was hidden by the smoke and vapor of the accommodation train pulling in ahead.    This circumstance, undoubtedly, was the cause of the want of notice by the deceased of the approaching train.    He either thought the express train had gone by, or had not yet come,—not seeing it,—while in fact it was not many rods away, obscured by the vapor and smoke.    Assuming the deceased to have possessed the ordinary instincts of care for his own life, it is evident that the concealment of the express train by this smoke and vapor led to the act of deceased which occasioned his death.    The presence of that smoke and vapor, therefore, was known to him.    It was evident.    It was also known to the deceased that it covered the very track upon which that express train, which he knew was to pass at about that period of time at a fast rate of speed, would bring to him a possible source of great danger.    What, then, was his duty? If the track had been clear, and he had shut his eyes as he walked over it, beyond doubt his voluntary deprivation of the power of sight would have been contributory negligence.    Does not his voluntary act in stepping upon the track, at a time when his power of sight was practically useless, subject him to the same charge?    It was a trifling matter for him to have remained off the tracks altogether, or even to have not passed beyond the second track until he was sure that the express train had passed, knowing that he could not see that train on account of the cause which necessarily hid it.    It was a very serious danger to voluntarily encounter in stepping upon the track without the power of sight, and with the knowledge of the probable risk.    I think it quite clear that all of the inferences in the case not only show that the plaintiff has not given sufficient evidence tending to prove that the deceased was not guilty of contributory negligence, but that it is affirmatively shown that Dr. Mixsell, in passing upon the point of known danger, acted without ordinary prudence, under the circumstances of this case.    Vahue v. Railroad Co., 18 App. Div. 452, 46 N. Y. Supp. 359; Lortz v. Railroad Co., 83 Hun, 271, 31 N. Y. Supp. 1033; Foran v. Railroad Co., 64 Hun, 510, 19 N. Y. Supp. 417; Whalen v. Rail road Co. (Sup.) 15 N. Y. Supp. 941.    Some of these cases refer to the decision of the court of appeals in the case of McNamara v. Railroad Co., 136 N. Y. 650, 32 N. E. 765.    In that case, undoubtedly, the jury might have found from the evidence that a curve in the line of the road prevented the deceased from seeing the approach of the locomotive, and that the smoke was not the primary cause.    The present case is all the stronger on account of the knowledge of the deceased that there was no flagman to warn people of an approaching train; that the place where he crossed was only a permissible crossing, and not one provided for public use by the railroad; and that the momentary danger was then greater than at other periods of the day. The verdict in this case must therefore be set aside, and not only the general verdict, but the findings of fact that the crossing was not known to the deceased to be a dangerous crossing, that the smoke did

not obscure the view by the deceased of the approach of the express train, that the deceased looked and listened at the right time to ascertain if the express train was coming, and that the deceased was not guilty of negligence which contributed to the accident.

The further question arises in the case as to the order to be entered upon setting aside such verdict.·  The ordinary rule is that a new trial should be granted.    This kind of an order, however, would not accomplish the purposes intended by the practice adopted under the Code of Civil Procedure in this case.    That purpose is to give final judgment for the plaintiff or the defendant upon the findings and the evidence. The motion to dismiss the complaint has been once denied, but it may be reasonably held that, with the verdict set aside, the court has power to reconsider such a motion to dismiss, and give judgment accordingly, or to set aside the verdict on account of such erroneous ruling.    Code Civ. Proc. § 999.    If the evidence, and those findings of the jury which are sustained by the evidence, show that judgment should be given for a dismissal of the complaint, why may not that be accomplished, within the spirit of our Code of Civil Procedure, enlarging the scope of the power of the court to direct a judgment after a verdict as it existed under the common-law practice?    Under the old practice a judgment non obstante veredicto might be rendered where the plea confessed and avoided the cause of action, but it was held that the matter in avoidance was insufficient.    Freem. Judgm. § 7.    This practice of taking a verdict under the provisions of section 1187, as they now stand, was followed by Mr. Justice Dugro in the case of Caspers v. Railroad Co. After the submission of specific questions of fact and the amount of damages to the jury, and their verdict thereon in favor of the plaintiff, the court set aside the verdict and dismissed the complaint.    This decision was affirmed by the appellate division, First department, with an opinion commending the practice adopted in that case.  (Sup.) 47 N. Y. Supp. 961; (App. Div. 1st Dept.; MSS) 48 N. Y. Supp. 352.  In another case (Guilfoyle v. Seemans), Mr. Justice Dugro, recently, upon such a submission to the jury of special findings, and for the amount of damages, took the verdict, allowed it to be entered, and then set it aside and dismissed the complaint.    From time immemorial, courts have had the power to set aside the verdict of juries and render judgment, or grant a venire de novo, and no special statutory authority was necessary for that purpose.    To save, however, the formality and unnecessary labor and delay of making a bill of exceptions, or a case, where a motion to set aside the verdict or to grant a new trial was made before the judge who presided at the trial, and who knew, therefore, all of the questions arising in the case, statutory authority was given in this state, which is now condensed in section 999 of the Code of Civil Procedure, to allow the motion to be made upon the minutes of the judge presiding at the trial.    That section is no impairment of the power previously existing, but gives additional authority, without the necessity of a bill of exceptions or a case.    By that section the judge may entertain the motion to set aside the verdict or a direction dismissing the complaint, and may grant a new trial upon the exceptions in case the verdict is excessive or insufficient in damages, or contrary to the evidence or to the law.    The section

recognizes that, when a judge may entertain a motion, he may necessarily, as a result of such a consideration, direct that the verdict or the direction dismissing the complaint be set aside. Under this section of the Code, it is manifestly improper to terminate the right of the plaintiff to a fair trial upon his claim where the verdict is set aside for any cause other than that the proof made in the case shows he is not entitled to recover. The plaintiff should be entitled to a new trial, even if the verdict be set aside, if the decision be that some error has been committed to the prejudice of the defendant, short of the error in denying a motion to dismiss the complaint, or to direct a verdict upon the merits. Where the plaintiff has, however, had a full opportunity to prove his case, and the judgment of the court upon the facts proven is that he is not entitled to recover because of lack of merits, I know of no reason which should give him a new trial, when, if the court had ruled rightly on the motion to dismiss the complaint or direct a verdict before the jury had passed upon the case, the result would have been final, and no new trial would have been awarded. It is hardly fair to punish the defendant, and give the plaintiff favor, because the court erred in not originally sustaining the position taken by the defendant. It would therefore seem not only within the theory of section 1187 of the Code of Civil Procedure, but also a just and proper practice, where the whole case, upon the evidence and the findings of the jury, demonstrates that the defendant should succeed, in placing the judgment of the court in the form of awarding judgment in favor of the defendant, instead of granting a new trial, so that, if the judgment of the trial court is correct upon the merits, that judgment may be undisturbed, and if, on the contrary, the appellate courts differ with the trial court upon the main question, those courts upon appeal may award final judgment in favor of the plaintiff upon the verdict given. In the case of Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, where the court of appeals had the distinction of first announcing the principle that a murderer cannot take from his murdered victim the property which was the object of his·crime, the practice of terminating a litigation, where the question involved the legal conclusion drawn from the facts as proven, is strikingly exemplified. The action was an equitable one, brought by the daughters of the murdered man to enjoin and prevent the murderer from possessing and squandering the property he claimed to inherit through his crime; and the trial court dismissed the complaint, though finding the facts in favor of the plaintiffs, upon the ground that the statute gave the property to the murderer, despite his crime. The judgment of the trial court was affirmed by the general term, and an appeal was taken to the court of appeals by the plaintiffs. That court, in deciding the principle stated, reached the conclusion that the relief asked for by the plaintiffs should be granted, and awarded specific and full equitable relief as directed by the court in its opinion. See page 514, 115 N. Y., and page 191, 22 N. E.

Believing that plaintiff, who shows no right upon a full and fair trial to a recovery, should not have a new trial because the complaint was not dismissed when it ought to have been dismissed, or a direction for a verdict given when it ought to have been given in favor of the

defendant, in passing upon the relief to be granted in this case I deem it proper to set aside the verdict as indicated, and also to dismiss the complaint, with costs.    Ordered accordingly.