(32 Misc. Rep. 289.)

## GRIFFITH v. METROPOLITAN ST. RY. CO.

(Supreme Court, Special Term, New York County. July, 1900.)

1. STREET RAILROADS—PERSONAL INJURY—NEGLIGENCE.

A motorman on defendant's street car, going 9 miles an hour, saw plaintiff, a boy about 8 years old, on the track, 60 or 75 feet ahead, in the middle of the block, where cars did not stop for passengers. The boy was looking full at the approaching car, and, though prevented from continuing across the tracks by cars passing in the opposite direction on the other track, he had five or six seconds in which to step back out of danger. Instead of doing so, he appeared to be tarrying in boylike defiance of danger. *Held*, that the failure of the motorman to stop the car and avoid injury to plaintiff was not such a departure from ordinary prudence as to constitute negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff was as capable of self-protection as is usual with boys of his age; he did not claim that he was confused; and the motorman, perceiving that plaintiff saw his car, made no effort to stop. *Held*, that the evidence showed such contributory negligence that a verdict for plaintiff would be set aside.

Action for personal injuries by Harry Griffith against the Metropolitan Street-Railway Company. Verdict in favor of plaintiff set aside, and action dismissed.

Bullowa & Bullowa, for plaintiff.

Henry A. Robinson, for defendant.

RUSSELL, J. The defendant asks, upon a reserved motion after trial and verdict, to dismiss the complaint and set aside the verdict for $5,000 which the jury gave the plaintiff by assessment of damages and special findings of fact all in plaintiff's favor. On the 17th of April, 1899, the plaintiff, a boy about 8 years of age, on a bright day, undertook to cross the tracks of the defendant near Ninety-Fourth street, on Columbus avenue, in the city of New York, midway between the cross walks forming the northern boundary of Ninety-Third street and the southern boundary of Ninety-Fourth street, and was struck by a cable car moving uptown on the east tracks; his right arm fractured, and his left leg crushed so that amputation above the ankle became necessary. There is no sufficient evidence to support a verdict, unless his version of the occurrence, partly supported by testimony of two other witnesses, gave the jury the right to find negligence of the defendant, and an absence of contributory negligence on his part. His narration should have been received by the jury, and must be considered by the court with sufficient caution, because not only of his childish years, but of the confusion and disturbance of memory and mental power from the severe injury by him received, and the brief period of about six seconds in the receipt of the mental im-

66 N.Y.S.—51

pressions upon the mind which he undertakes to reproduce upon the witness stand, and also, because of the great attractiveness of the child in his personnel, which, coupled with a lasting life injury, would necessarily disturb any sympathetic heart. He says that after being in a store, and gazing at workmen employed at a manhole, he walked across the street, reaching the eastern or uptown track after a car had passed upward, and was prevented from immediately crossing the tracks by two cars going downtown on the west track; that he nevertheless stood upon the east track, and, looking southerly, beheld another uptown car, two or three houses away, identifying a spot which by measurements and the maps produced locate the distance at 60 to 75 feet from where he stood. He turned around to move off the track, but was struck before he got out of danger, by a car moving not to exceed 9 miles an hour. The responsibility of his own voluntary acts is to be judged by the finding of the jury that he was sui juris,— capable of self-protection so far as a child of that age could ordinarily judge. On this version there is no conceivable escape from the conclusion either that he took the chances of being able to cross the west track after the last down-town car had passed, and before the uptown car reached him, or he voluntarily waited too long before stepping back two or three feet from the eastern track, which would have placed him in a position of safety. There is a dearth of evidence which would justify any assertion that circumstances of peril called for quick judgment between two choices of action, either of which might involve injury; for he knew that on the track he would be in peril, and that he could most easily avoid it by two steps backward or sideways, and he nowhere claims surprise or confusion. Any such confusion, to an extent throwing the responsibility upon the motorman, or exempting the plaintiff from its consequences, would not, upon the evidence in the case, justify a verdict against the one and for the other, and would be simply a hazardous guess on the part of any tribunal empowered to decide between these persons. The motorman knew that he had the right to ordinary free passage with his car between streets, so far as foot passengers were concerned. He had no right to move that car against an object more or less helpless, if the appearances reasonably required him to apprehend possible harm, but he had the right to assume that a free agent in the shape of a human being, alive with intelligence and an instinct of self-preservation, would not voluntarily remain upon the track in front of the approaching car, when one easy motion would remove him from peril. And this motorman knew, from the look which the boy cast upon that approaching car, that it was seen by him; and sight, under such circumstances, was a better substitute for notice than any ringing of bell or sounding of gong, upon which subject there is a divergence of testimony. To hold the motorman liable for negligence, the court must affirm that the danger of an active boy remaining upon the track was such that this motorman should have stopped the car in the middle of the block, before the boy was reached, whether or not that car could have been stopped with a sudden jerk, to the

discomfort and possible injury to the passengers inside, at a distance of 15 feet or 30 feet from the place of a sudden and violent application of the brakes. The omission to so stop the car was not such departure from ordinary prudence as would justify the charge of negligence, and a verdict to the contrary cannot be sustained. Bello v. Railway Co., 2 App. Div. 313, 37 N. Y. Supp. 969. A more pertinent case, however, in my view, is one not cited by counsel, decided by the appellate division, First department (Greenberg v. Railroad Co., 35 App. Div. 619, 55 N. Y. Supp. 135). If this case has been overruled in any manner, it has escaped my observation.

The same condition of things applied to the purely voluntary acts of the plaintiff brings the presumption of his negligence. He was not justified by any rules of ordinary prudence, even judging a boy of that age, to remain upon the track for five or six seconds after he saw a car approaching upon the same track at a point where people do not usually cross the avenue; and, if impelled by a native fearlessness of temper, willing to risk the chances of seeing how near he could come to danger without attack from it, he cannot shift the responsibility of his choice upon one engaged in the duty of public service, who had no reason to apprehend the courting of danger by the boy in front of the car.

I have considered this case so far upon the motion to dismiss the complaint in as favorable a light to the claim of the plaintiff as the evidence justifies. A different view of the facts is so reasonable, however, as to justify the belief that it is fairly proven with all the sufficient certainty which the law requires. Various witnesses for the defendant testify substantially that the accident occurred from the boy attempting to run ahead of the car when it was within a few feet of him. Such action would be natural and boylike, while his standing upon the track after sight of the car would be unnatural, and not even instinctively intelligent.

The practice of receiving special findings of fact and an assessment of damages, with a reservation of a motion to dismiss the complaint, seems to be approved, as well adapted to satisfactorily determine the litigation either at the end of the trial, or upon appeal, without the necessity of one or more new trials. Code Civ. Proc. § 1187; Caspers v. Railroad Co., 22 App. Div. 156, 47 N. Y. Supp. 961; Sullivan v. Railroad Co., 37 App. Div. 491, 56 N. Y. Supp. 88. It was adopted in a case tried before the justice who presided at this trial, in which the verdict of the jury was for $30,000, and in which the complaint was finally dismissed upon the merits, notwithstanding the verdict. Mixsell v. Railroad Co., 22 Misc. Rep. 73, 49 N. Y. Supp. 413. In the case at bar, if the trial court is correct in its views, the plaintiff may not recover. If incorrect, the verdict may be restored by the appellate tribunal, and the controversy in that matter ended. The verdict is set aside, and the complaint dismissed, with costs.

Verdict set aside, and complaint dismissed, with costs.