tion whatever. They are entitled, under the will, to the proceeds of the funds left in trust for them during the whole of their natural lives. It would seem, therefore, that their estates do not fall within the scope of the amendment, and it may well be doubted whether the amendment was intended to apply at all to cases where a life estate is coupled with a testamentary power of appointment, to be exercised at its conclusion. It is to be observed that the amendatory statute (chapter 76, p. 100, of the Laws of 1899) makes no change whatever in any section of the transfer tax law, except section 230. It leaves unchanged section 220, the fifth subdivision of which, relating to powers of appointment, has already been quoted. The effect of the amendment, therefore, was the same as though one statute had been enacted containing subdivision 5 of section 220 and section 230 as changed in 1899. We thus have, in contemplation of law, an act of the Legislature containing specific directions as to the taxation of estates in regard to which a power of appointment is conferred upon the original transferee; and I do not see how it can well be held that a subsequent provision in the same statute in regard to the taxation of transfers of property where the estates of the transferees are dependent upon contingencies or conditions effects a repeal by implication of the specific provision relating to transfers through the instrumentality of the donee of a power. Neither the Matter of Vanderbilt's Estate, 172 N. Y. 69, 64 N. E. 782, nor the Matter of Brez's Estate, 172 N. Y. 609, 64 N. E. 958, bears upon the question in controversy here. Those decisions relate wholly to the effect of section 230 of the transfer tax law, and the opinions contain nothing in conflict with the views which have been expressed. I think that the decree of the Surrogate's Court should be affirmed.

Decree of the Surrogate's Court of Kings county affirmed, with costs. All concur.

---

(86 App. Div. 316.)

WESTERVELT v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. RAILROADS—INJURIES AT CROSSING—FAILURE TO WARN—NEGLIGENCE—EVIDENCE.

Where, in an action for death of plaintiff's intestate by being struck by a train at a railroad crossing, defendant introduced no evidence of any signal of the approach of the train to a station and the crossing, and two witnesses, having no relation to either party, who were sufficiently close to the train to have heard a whistle or bell if it had been rung, testified that they heard neither whistle nor bell, the evidence was sufficient to justify a finding of negligence on the part of the defendant.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Deceased, while attempting to cross several railroad tracks at a street crossing, was warned by a flagman not to attempt to cross further when he was on the second track; but he continued, notwithstanding the warning, to cross the third track, and stepped over the fourth, when he was struck by an approaching train. From the time deceased passed the railroad gates in his attempt to cross, he could have seen the train approaching for a distance of a quarter of a mile, except that at some points the train would have been hidden from view by standing cars, which, however, were plainly visible. *Held*, that deceased was guilty of contributory negligence, as matter of law.

Appeal from Trial Term, Westchester County.

Action by Susan Westervelt, as administratrix of the estate of James Westervelt, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of defendant, and from an order setting aside a verdict in favor of plaintiff and dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, and HOOKER, JJ.

Arthur J. Burns, for appellant.
Charles C. Paulding, for respondent.

WILLARD BARTLETT, J. The plaintiff's husband, James Westervelt, while endeavoring to cross defendant's railroad at Yonkers, on the morning of Sunday, May 4, 1902, was struck by one of the defendant's trains running south, and almost instantly killed. This action was brought under the statute to recover damages for wrongfully causing his death. At the close of the evidence for the plaintiff a motion to dismiss the complaint was denied, and the defendant rested without putting in any proof. The motion to dismiss was then renewed, and a motion was also made to direct a verdict for the defendant. The decision of these motions was reserved until after the verdict, and the jury found for the plaintiff, awarding her damages in the sum of $5,000. The learned trial judge subsequently set aside the verdict; stating that he did so, not on the facts, but solely on the ground that the defendant was entitled to have a verdict rendered in its favor at the close of the evidence. There is a short opinion in the record, but it does not disclose what particular reasons influenced the court in thus setting aside the verdict.

Upon the present appeal the learned counsel for the respondent argues in support of the action of the court below that there was not sufficient evidence to go to the jury on either branch of the case—the defendant's negligence or the plaintiff's freedom from contributory negligence. As to the first proposition, I am unable to agree with him. There was proof enough to justify an inference of negligence on the part of the defendant's agents and servants in charge of the train in failing to give any signal of its approach to the Yonkers station and the street crossing at which the plaintiff's intestate was killed. It is true, the testimony on this subject was by no means conclusive; but still, if believed by the jury, it would suffice to sustain a finding that no signal whatever was given, either by bell or whistle. Two witnesses testified on this subject, neither of whom appears to have borne any relation whatever to the parties. One of them swore that he was standing in front of an office, in a place where he could have heard the whistle blow or the bell ring on the train as it approached, and that he heard neither. "If the whistle blew or if the bell rang, I certainly could have heard it," he said. The other witness testified: "I heard the train go by, but I didn't know whether it was a freight train or a coach until I walked out afterwards. I didn't hear any bell rung or whistle blown from that train." This witness was only three or four hundred feet from the crossing on which the accident occurred. The learned trial judge,

in his charge, in commenting upon the testimony of these witnesses, told the jury that the law did not attach much importance to witnesses who merely say that they did not hear a thing.    No doubt, this is true.    He probably had in mind the doctrine laid down in Culhane v. N. Y. C. & H. R. R. Co., 60 N. Y. 133, which is so often cited in support of the proposition therein expressly laid down by Judge Allen, that, "as against positive, affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it, to authorize the submission of the question to the jury."    But in the present case there was no testimony of any witness, credible or otherwise, to the effect that the bell was rung or the whistle sounded on the engine of the train which killed the plaintiff's husband, though it is apparent that, if either of those signals had been given, the fact must have been known either to the engineer or fireman or both.

I conclude, therefore, that the verdict could not have been set aside on the ground that there was not enough evidence to authorize the submission of the case to the jury so far as the alleged negligence of the defendant was concerned.    A further examination of the record, however, in regard to the question of contributory negligence, satisfies me that the proof was insufficient to show that the plaintiff's intestate was free from carelessness.    The accident occurred just north of the station at Yonkers where Dock street crosses the defendant's railroad.    Mr. Westervelt came down Dock street from the north, going toward the river, and thus approached the tracks from the east.    The railroad company maintained gates on each side of its line at this crossing, and these gates were down at the time, so that he had to bend down to pass under them; but no negligence can be imputed to him from this circumstance, as the evidence showed that the gates were ordinarily kept down on Sundays.    There are four tracks at this point.    The witness who first saw Westervelt was a man named Strainline, who testified:

"I first saw Westervelt when he first got over to that first gate.    I saw him when he first got under the east side gate with a basket on his arm, in a stooping position.    That is the last I saw of him, though I saw him lying there after the train struck him."

The deceased was also seen before the accident by McCann, an employé of the defendant, who was the night flagman at the foot of Dock street, and had just gone off duty in the morning, and the flagman who succeeded him—a man named Larkin, who had just taken McCann's place.    McCann was standing with his back to the approaching train when he said he heard Larkin yell.    At this McCann turned around "to see what he was yelling about, and saw a man coming across the crossing with a market basket on his arm, walking directly toward the train.    He was walking directly across the crossing to the west side of the railroad—the river side."    This witness further testified as follows:

"When Larkin yelled out, he said: 'Stand back.    Stay back.'    He had his hand up in the air.    He was speaking to Westervelt, the man who was afterwards struck by the train."

Larkin's testimony as to the conduct of the deceased was as follows:

"I stood at the south side of the west gate, about two feet from the gate post, when I first saw this man that was killed. He was then on the second track from the east side, and I hollered at him to keep back. I saw him look at me, and I motioned to him to keep back. He paid no attention to me, but kept on coming across, and got across the west rail of the southbound track, when he turned around to see what was coming, when he was struck. I do not know whether it was the crossbeam of the engine or the side of the car that struck him, twisted him around, and knocked him down and killed him."

It thus appears that the deceased was warned by the flagman on duty not to attempt to cross further when he was upon the second track, but that he continued on his way notwithstanding the warning, and crossed the third track, and even got over the fourth track, upon which the approaching train was coming, before he was struck. The testimony of Larkin indicates that he may have supposed that he was sufficiently far across to avoid contact with the train when he turned around and was hit. I do not see how we can very well avoid the conclusion that he was guilty of contributory negligence under the circumstances disclosed by this testimony. The proof shows that from the time when he first got within the gates on the east side of the railroad he could have seen a train approaching from the north when it was about a quarter of a mile distant, if he had looked in that direction. It is true, there is evidence that some cars were standing upon the tracks, in a position where they would have hidden an approaching train from view at some points in his progress westerly across the railroad; but the deceased was chargeable with knowledge of the fact that the presence of these cars would thus obstruct his vision, and his conduct must be judged accordingly. The circumstances are quite different from those presented in Noble v. N. Y. C. & H. R. R. Co., 20 App. Div. 40, 46 N. Y. Supp. 645, affirmed in 161 N. Y. 620, 55 N. E. 1098, where the approach of the train was in fact concealed by intervening cars, but the presence of those cars was also concealed from the deceased by a heavy fog. I think the proof on the subject of contributory negligence justified the disposition of the case which was made by the court below, and that the judgment and order should therefore be affirmed.

Judgment and order unanimously affirmed, with costs. All concur.