The passage ticket, which was purchased and received before the trunk was delivered, contains a provision limiting the liability for the loss of baggage to $50, unless the value in excess should be declared and freight paid thereon.   This is binding on the plaintiff (Steers v. Liverpool, N. Y. & P. S. Co., 57 N. Y. 1, 15 Am. Rep. 453; Zimmer v. N. Y. C. & H. R. R. Co., 137 N. Y. 460, 33 N. E. 642), but by the defendant's neglect (or breach of contract, if you prefer) to put the trunk aboard, it lost the benefit thereof, and made itself subject to the full liability of a common carrier.   The loss is traced back of the immediate cause, viz., the fire, to the first cause, viz., the defendant's neglect or breach of contract in leaving the trunk on the dock instead of sending it off on the steamer, and attributed thereto; and there is no clause in the contract making the limited liability cover the case of negligence.   Michaels v. N. Y. C. R. Co., 30 N. Y. 564, 86 Am. Dec. 415;  Read v. Spaulding, 30 N. Y. 630, 86 Am. Dec. 426;  Maghee v. Camden & A. R. Co., 45 N. Y. 514, 6 Am Rep. 124;  Condict v. Grand Trunk R. Co., 54 N. Y. 500;  Rawson v. Holland, 59 N. Y. 611, 17 Am. Rep. 394;  London & L. F. Ins. Co. v. Rome, W. & O. R. Co., 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752.

There is a clause in the contract making a total exemption from liability for loss by fire.   It is inapplicable for the reason stated above; but it is enough that no such defence is pleaded;  nor was it presented on the trial, if that could be of any moment.

The motion to set aside the verdict is denied.

---

(89 App. Div. 152.)

### HATCH v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Schenectady County.   December, 1903.)

**1. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.**
   Evidence in action for injuries to woman at a railroad crossing *held* not to show her free from contributory negligence in failing to look on approaching crossing.

Action by Mason J. Hatch against the New York Central & Hudson River Railroad Company.   Verdict for plaintiff.   Motion to set aside the verdict granted.

John D. Murray, for plaintiff.
Jackson & Strong, for defendant.

JOHN M. KELLOGG, J.   This is a motion upon the minutes of the court to set aside a verdict of $5,000 for the death of the plaintiff's intestate.   Where Congress street crosses the four tracks of the defendant in Schenectady, the tracks are in a cut in a side hill, and the street comes onto the tracks through another cut, so that a person traveling south upon the street cannot see the railroad to the east or west of the crossing until within about 17 feet of the nearest track.   The nearest rails in tracks 3 and 4 are 7 feet apart.   The plaintiff's intestate crossed the fourth or most northerly track in front of an east-bound freight train, and was killed on the third track by a west-bound freight train.

It seems that where a witness is so circumstanced that he would naturally hear a signal from an approaching train, or was giving particular attention to the train and its movements, his testimony that he did not hear the signal is some evidence that the signal was not given, and may overcome the evidence of the trainmen that it was given. Burke v. Brooklyn W. & W. Co., 86 App. Div. 297, 83 N. Y. Supp. 795; Brown v. N. Y. C. & H. R. R. Co. (Sup.) 83 N. Y. Supp. 1029; Westervelt v. N. Y. C. & H. R. R. Co., 86 App. Div. 316, 83 N. Y. Supp. 827. In this case the only evidence tending to show that the signal was not given was by the daughter of the deceased, who swears that she was paying particular attention, and by the plaintiff, who swears that he did not hear a bell ring, but cannot say whether he did or did not hear the whistle blow. They are deeply interested in the result. It is doubtful whether the daughter's evidence, when we consider that the wind was blowing from the direction where she stood toward the train, and that a house intervened, makes a preponderance of evidence that the bell was not rung. A person walking down Congress street could see a train approaching at 18 miles an hour from the east when it was about 150 feet away from the crossing, and, if the engineer had been giving close attention to this dangerous crossing, he would have seen the plaintiff's intestate approaching the crossing when he was 150 feet away. While the train was passing over this 150 feet the engineer was occupied in looking around, tending to his water gauge, and did not see the deceased until she was 10 feet away. The jury may have felt, no emergency being shown which required attention to the water gauge at that particular point, that the engineer was careless in taking his attention away from the crossing, and that, if he had been watching the crossing during the time, by a warning whistle he might have prevented the accident. It is, however, incumbent upon the plaintiff to show by a fair preponderance of evidence—the negligence of the defendant being conceded—that no negligence upon the part of the deceased contributed to her death; and, unless some proof is produced tending to show that fact, a recovery cannot be sustained. Aside from the evidence of Mrs. Ellis, the daughter of the deceased, there is no evidence as to the conduct of the deceased, or how she came upon the tracks at this time, and without that evidence a nonsuit must have been granted. Wieland v. Delaware & Hudson Canal Co., 167 N. Y. 19, 60 N. E. 234, 82 Am. St. Rep. 707; McAuliffe v. N. Y. C. & H. R. R. Co., 85 App. Div. 187, 83 N. Y. Supp. 200. The question now, strictly speaking, is not whether there is an entire absence of evidence as to the want of contributory negligence which would have justified a nonsuit (Walsh v. C. N. Y. T. & T. Co., 176 N. Y. 163, 68 N. E. 146), but whether there is such a preponderance of evidence in the case as fairly justifies and sustains the verdict (McDonald v. Met. St. R. Co., 167 N. Y. 66, 60 N. E. 282; Serwer v. Serwer, 71 App. Div. 415, 75 N. Y. Supp. 842).

If the daughter's evidence is taken literally as true, it does not free the deceased from the imputation of contributory negligence. Plaintiff's intestate had lived for years with her family within about 120 feet of the crossing; knew the condition of the track, the frequency

of trains, and knew that they were likely to pass in opposite directions at the same time. She knew that on account of the depression of Congress street, and the depression of the track, she could not see an approaching train from either direction until she was within about 17 feet of the nearest track. She knew whether these embankments would prevent the hearing of a signal from the train, and what the effect of smoke or a cloudy day would be upon the vision. The daughter swears that when standing at the pump about 115 feet distant from the crossing, and on an elevation of 12 feet above it, she saw her mother standing about 2 feet from the northerly rail of track 4—the nearest track—and that she saw her turn her head both to the east and to the west, and the witness saw the westerly bound freight train at the whistling post in plain sight. And while she has no judgment as to distances, she says, when forced to estimate, that it was about 50 feet away. She then turned and went into the house, leaving her mother standing there. It is a fact that the vision to the east is entirely unobstructed from the place where the mother was standing for at least 2,400 feet. It is evident that if she looked, as the daughter says she did, she must have seen the approaching train; and if she saw it, and attempted to pass in front of it in order to avoid waiting for both freight trains to pass, it was a chance that she took, and the defendant is not liable. If she did stop and look, and did not see the train, she did not look intelligently, but carelessly. Otherwise she must have seen it. A person, by looking carelessly and unintelligently, and for that reason not seeing, is just as negligent as he would be in not looking at all. By way of argument, it is suggested that her vision was obstructed by the smoke from the train coming from the west, and that the day was cloudy. It was about 3 o'clock in a December afternoon. If the smoke from the train obscured her vision, it was her duty to remain until it passed away. With a freight train coming east 50 feet from the crossing on the track nearest her, it would be clearly negligent for her to attempt to cross the four tracks in front of it if the smoke of the train prevented her from seeing whether a train was coming on one of the other tracks. Westervelt v. N. Y. C. & H. R. R. Co., 86 App. Div. 316, 83 N. Y. Supp. 827; Heaney v. L. I. R. Co., 112 N. Y. 122, 19 N. E. 422; Lortz v. N. Y. C. & H. R. R. Co., 83 Hun, 271, 31 N. Y. Supp. 1033; Vahue v. N. Y. C. & H. R. R. Co., 18 App. Div. 452, 46 N. Y. Supp. 359.

When the mother stood there, she was in a place of safety, apparently acting naturally and in control of herself. When the engineer saw her, she was apparently walking along as though unconscious of danger. It cannot, therefore, be said that she was frightened by the train from the west, or that an emergency was caused thereby which excused her in rushing in front of the train. Before she left the house the easterly bound train was in sight, and it is fair to assume that she knew of its progress. It is evident that the witness was entirely wrong in her estimate of the distance from the crossing to the easterly bound train at the whistling post. The engineer and the workmen upon this train, who had nothing to do with the accident, and the engineer upon the west-bound train, swear positively that the engine of the west-bound train passed the east-bound en-

gine upon the curve, which all the evidence shows is about 1,000 feet west of the crossing.

The evidence is not clear as to the whistling post. The daughter swears to such post, and one of the other witnesses says that he thinks there was a whistling post east and west of the crossing, some 1,000 feet from it, and upon the south side of the track. If the post referred to by the daughter was a whistling post, it is evident that it was not within 50 feet of the crossing, but would naturally be upwards of 1,000 feet away. I do not think her evidence is really in conflict with that of the trainmen that the east-bound train was at least 1,000 feet from the crossing at the time of the accident. That being so, the question of smoke and of any emergency or fright on account of the train is out of the case, and it is apparent that there was no trouble on account of the smoke, for the daughter had no difficulty in seeing her mother, as she says. All of the evidence as to the smoke, and the statement of the son-in-law that he saw billows of smoke from other trains that day, is too indefinite and uncertain to found a verdict upon in this case. I am satisfied that there is not any substantial evidence which ought to be believed by the jury, and which is sufficient to show, under all the circumstances of this case, that the deceased was free from negligence which contributed to her injury. It seems that the ends of justice will be promoted by setting aside the verdict and ordering a new trial. It is so ordered, with costs to abide the event.

Ordered accordingly.