GARRAN v. MICHIGAN CENTRAL RAILROAD CO.

1. Railroads — Injuries at Crossing — Contributory Negligence—Question for Jury.

A pedestrian, before starting across a street on which trains were operated, looked and listened. He saw freight cars some distance away, but could not see that they were moving. He looked again when about half way to the track and saw the cars, but could not see that they were moving. There were no lights on the cars. He listened and heard no signals until just as he got to the track when he was struck by cars backed down the street at a speed of about 18 miles an hour, without ringing the bell, without signal lights, and without any man on the cars to warn persons in the street. *Held*, that the pedestrian was not guilty of contributory negligence as a matter of law.

2. Evidence—Opinions—Witnesses—Competency.

Persons living near a railway track who can tell when trains are going at a high rate of speed, and when they are going at a slow rate, and who have observed trains to see about how fast they run, are competent to give an opinion on the subject of the rate of speed of a particular train.

Error to Wayne; Brooke, J. Submitted February 16, 1906. (Docket No. 176.) Decided April 30, 1906.

Case by Peter Garran against the Michigan Central Railroad Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*O. E. Butterfield* (*Henry Russel* and *Ashley Pond*, of counsel), for appellant.

*Edward McNamara* (*David E. Heineman*, of counsel), for appellee.

Moore, J. The plaintiff recovered a judgment for injuries received at a street crossing from a train belonging

to defendant.   A motion for a new trial was made, which motion was overruled.   The case is brought here by writ of error.

It is the claim of defendant that the record shows from the testimony of plaintiff's witnesses that he was guilty of contributory negligence and that a verdict should have been directed in favor of defendant.   No witnesses were sworn on the part of defendant.   Joseph Campau avenue runs north and south.   At its foot is the dock where the ferryboats stop.   Two blocks from the river Guion street, running east and west, crosses Joseph Campau avenue at right angles.   There is an electric light near the intersection of these streets.   The defendant company operates an industrial railroad on Guion street, the main design of which is stated in the ordinance to be to transport freight for the accommodation of the heavy traffic along the river front to and from the factories.   No passenger trains are run, and it is provided that the trains and cars may be run at irregular hours.   This portion of the city is thickly settled.   An ordinance of the city limited the maximum speed of trains to six miles, and required the cars after sunset to have red signal lights in front except when moved by steam engines when it required the train to be provided with the usual signal lights.

It is the claim of plaintiff that at about half past 8 o'clock in the evening he started from the southwest corner of these two streets to cross the street diagonally to the northeast corner to go thence home.   He had seen a locomotive and freight cars go west some time before this.   He testified that before starting across the street he looked and listened; that he could see freight cars some distance away to the west, but could not see that they were moving; that he looked again when he got about half way to the track, and while he could still see the cars he could not see they were moving; that there were no lights on the cars he saw; that he listened and heard no signals until just as he got to the track when he was struck.   It is his claim that the electric street light was

burning dimly; that a locomotive attached to the cars was backing them down this street from the west at a speed of 18 to 20 miles an hour without ringing the bell, without signal lights, and without any man on the cars thus approaching the intersecting street to warn persons lawfully in the street of the approaching train. This claim of his was supported by an abundance of testimony tending to establish its truth. Under this state of facts we think it cannot be said, as a matter of law, that plaintiff was guilty of contributory negligence. See *Palmer* v. *Railroad Co.*, 56 Mich. 1; *Ryan* v. *Railway Co.*, 123 Mich. 597; *Smith* v. *Railroad Co.*, 136 Mich. 224; *Coffee* v. *Railroad Co.*, 139 Mich. 378.

It is said the court erred in permitting the witnesses McGarry and Dorrington to give their opinions as to the rate of speed of the train. The record discloses that each of these witnesses had lived for two or three years in houses fronting upon this railway track not more than three or four rods from it. The following also appears in McGarry's testimony:

"*Q.* How rapidly was that train going — the cars? Have you been accustomed to examine the speed of cars going down there?

"*A.* Well, no. I can tell when they are going at a pretty good rate of speed, and I can tell when they are going slow.

"*Q.* You have seen them out there before this?

"*A.* Yes.

"*Q.* State to the jury, in your opinion, how rapidly they went.

"*Mr. Butterfield:* I object to that as incompetent.

"*The Court:* For what reason?

"*Mr. Butterfield:* For the reason that the witness has not shown himself competent to express an opinion as to the speed of the train.

"*The Court:* The value of the testimony is for the jury; anybody can express an opinion. You may have an exception."

Mr. Dorrington testified:

"I have a great fashion every night of watching them trains go by.

"*Q.* Did you notice the train going when it went by?
"*A.* Yes, sir.

"*Q.* Have you examined the trains down there to see about how fast they go — before that?
"*A.* Oh yes.

"*Q.* How rapidly would you say the train was going after it went on?
"*A.* She was going close to 17 or 18 miles an hour."

The testimony also discloses that when plaintiff was struck one of the witnesses took a red light, which was a danger signal put in the street on account of paving which was being done, and swung it, when the engine was stopped but the freight cars ran on for 300 feet before they were stopped. In a question like this Justice COOLEY used the following language:

"Any intelligent man, who had been accustomed to observe moving objects, would be able to express an opinion of some value upon it the first time he ever saw a train in motion. The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with timepiece in hand, the motion of an object of such size and momentum, but this would only go to the weight of the testimony, and not to its admissibility. Any man possessing a knowledge of time and of distance would be competent to express an opinion upon the subject." *Detroit, etc., R. Co.* v. *Van Steinburg,* 17 Mich. 99.

See, also, *Guggenheim* v. *Railway Co.,* 66 Mich. 150; *Mertz* v. *Railway,* 125 Mich. 11. We think the court did not err in his ruling.

Judgment is affirmed.

MCALVAY, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.