## HAUFF & STORMO et al., Respondents, v. SOUTH DAKOTA CENTRAL RAILWAY COMPANY, Appellant.

### (147 N. W. 986.)

**1.  Appeal—Error—Negligence—Refusal to Direct Verdict—Review. —Evidence, Presumption as to.**

Where a finding, in an action for negligence, is in favor of plaintiff, upon conflicting evidence, the Supreme Court will, in reviewing defendant's motion for a directed verdict, assume that the facts were as alleged by plaintiff.

**2.  Negligence—Railroads—Collision With Automobile—Contributory Negligence—Question for Jury.**

Where, in an action for damages from collision of a freight car with an automobile, plaintiffs' evidence showed defendant's track clear in direction of the approaching car for a distance of 800 or 900 feet, and that the automobile driver, though looking and listening, neither saw nor heard cars approaching from that direction, held, the question whether he was guilty of contributive negligence in assuming that no cars were approaching, and in attempting to cross without looking in that direction after he was within 300 feet of the crossing, was for the jury.

**3.  Same—Collision with Automobile—Submission of Issues—Positive and Negative Evidence, Relative Weight of.**

Where, in an action for damages from collision between a freight car propelled by defendant's engine, and an automobile, plaintiff testified that he was looking and listening for trains when approaching the crossing, and that he neither saw nor heard a train or any signals, being corroborated therein by other witnesses, and it appeared he was in a position where he could have seen or heard an approaching train, held, the court properly submitted to jury the question whether the bell was rung and the whistle blown, though defendant's witnesses testified positively that such warnings were given; such negative evidence being of such character and weight as to raise an issue as against such positive evidence.

**4.  Negligence—Contributory—Findings—Conflicting Evidence—Affirmance.**

In an action for damages from collision between a freight car propelled by defendant's engine, and an automobile, findings on controverted questions whether defendant's employees failed to ring the bell or sound the whistle as the train approached the crossing, and whether plaintiff, who was conducting the automobile, was guilty of contributory negligence, will not be disturbed on appeal.

5. **Trial—Instructions—Refusal of Instructions Covered—Good as a Whole.**

The refusal of instructions covered by those given, in an action for negligence, was not error; nor will objections to certain portions of instructions given, which instructions as a whole were good, be considered on appeal.

6. **Witnesses—Examination of Adverse Party—Exclusion of Question—Statute—"For Cross-examination"—Same as Ordinary Witness—Scope of Examination.**

Where, in an action for damages from collision between a freight car propelled by defendant's engine, and an automobile, defendant called one of the plaintiffs as a witness, under Laws 1909, Ch. 72, authorizing interrogation of an adverse party, held, it was error to exclude, as not proper cross-examination, a question whether his partner, who was driving the automobile, had not stated to him that the accident would not have happened had not another person been holding the wheel while the partner was putting on his gloves; such witness being called the same as any other witness, though, because he is deemed an adverse witness, the statute authorizes proceeding as by way of cross-examination.

7. **Evidence—Adverse Party as Witness—Contributory Evidence—Collision With Automobile.**

In an action for damages from collision between a freight car propelled by defendant's engine, and an automobile, evidence, by one of defendants called by plaintiff as an adverse witness, that the driver of the automobile had stated to his partner, the witness, that the accident would not have happened had not another been holding the wheel while he, the partner, was putting on his gloves, was admissible on the issue of contributory negligence.

8. **Trial—Contributory Negligence—Material Evidence—Offer of Proof, Necessity of.**

Where the question propounded to a witness disclosed the materiality of the evidence sought to be elicited, upon an issue of contributory evidence, held, that no offer of proof was necessary to render erroneous the exclusion of the question.

Whiting and Polley, J. J., dissenting in part.

(Opinion filed June 15, 1914.)

Appeal from Circuit Court, Codington County. Hon. CHAS. X. SEWARD, Judge.

Consolidated actions by Hauff & Stormo, copartners, and by Andrew B. Stormo, individually, against the South Dakota Cen-

tral Railway Company, to recover for damages from an injury to an automobile, and for personal injuries. From judgments for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed.

*Hanten & Hanten,* and *Joe Kirby,* for Appellant.

*McFarland & Johnson,* for Respondents.

(2) Under point two in the opinion, Appellants submitted: That Stormo was guilty of contributory negligence. And cited: N. P. Ry. Co. v. Freeman, 174 U. S. 378; Sutherland v. N. Y., Etc., Ry. Co., 9 J. & S. (N. Y.) 17; Moise v. Erie Ry. Co., 65 Barber (N. Y.) 490; Nichols v. G. West. Ry. Co., 27 U. C. Q. B. 382; Schofield v. C., M. & St. P. Ry. Co., 114 U. S. 615; Cent. Ry. of Ga. v. Barnett, 44 So. (Ala.) 392; Bourne v. Phila. Ry. Co., 48 Atl. 263.

Respondent cited:

Dougherty v. Chicago, M. & St. P. Ry. Co., (S. D.) 104 N. W. 672; Earnest v. Hudson River R. R. Co. (N. Y.) 90 A. D. 761; Earnst v. Hudson River R. R., 35 N. Y. 9, 90 A. D. 761; Whaley v. Vidal, 132 N. W. 245; Wallenburg v. Mo. Pac. Ry. Co., 126 N. W. 288; Moore v. Chicago St. & Kansas City Ry. Co., (Iowa) 71 N. W. 569; Pendroy v. Great Northern Ry. Co., (N. D.) 117 N. W. 534; Sec. 538 Civil Code.

(3) Under point three of the opinion, Appellants submitted: That plaintiffs' negative evidence is not controlling.

Respondent cited:

Mackreall v. Omaha St. L. R. Co. (supra); Wickham v. Railway Co., (Wis.) 69 N. W. 982.

(5) Under point five of the opinion, Appellants referred, generally, to authorities cited under point 2.

Respondent submitted: That the failure to give the requested instructions was cured. And cited: Dougherty v. Chicago, Milwaukee & St. Paul Railway Co. (supra); Section 538, Civil Code; Kelly v. Anderson, 15 S. D. 107.

(6) Under point six of the opinion, Appellants cited:

Chapter 72, Laws of 1909; Re Brownell, 35 N. W. (Minn.) 726; P. F. Efferkorn v. Seefield, 68 N. W. (Minn.) 1072; Couch v. Steel, 65 N. W. (Minn.) 946.

SMITH, P. J.   Appeal from Circuit Court of Codington County.   Hauff and Stormo as partners, brought an action against the South Dakota Central Railway Company, to recover damages to an automobile, resulting from a collision with a box car propelled by one of defendant's engines.   Andrew B. Stormo, one of the partners, who was driving the automobile at the time of the collision, also brought an action for damages for personal injuries received in the same collision.   The evidence in the two cases being identical, the parties stipulated that the two cases be consolidated and tried together.   Separate verdicts were returned in favor of the two parties plaintiff.   At the close of all the evidence, the defendant, appellant here, moved the court for a direction of a verdict in its favor, which motion was as follows:

"At this time the defendant moves the Court, and asks the Court to direct the jury to return a verdict in favor of the defendant on all the issues on the ground that the testimony is insufficient to entitle the plaintiff to recover in either action; on the further ground that the testimony shows that the plaintiff Andrew H. Stormo was negligent in not taking and keeping his sense of sight and hearing employed in detecting whether or not a train was coming from the south, and did not use the ordinary care and caution that a person should use before attempting to make a railroad crossing, and for the further reason that the testimony does show that he was negligent and assumed the risk in attempting to make this crossing ahead of the train, after he had seen the train, and must have seen the train coming from the south."

The motion was denied and appellant assigns error.   The evidence tends to show that Hauff and Stromo were partners running an auto livery; that on Aug. 16, 1911, about 8 o'clock in the morning, Andrew Stormo, who was an experienced chauffeur, while going west on First Ave., in the City of Watertown, with a passenger in an automobile, was struck by a box car propelled by one of defendant's engines, backing north on the Great Northern track.

The testimony showed the locatiton of different points and tracks as in the following plat:

A to C 650 feet.

A to B 675 feet.

C to B 825 feet.

D to A 300 feet.

A Point of accident.

C Where Mr. Stormo crossed C. & N. W.

D Where Mr. Stormo last looked for train.

E Mr. Stormo's point of vision when last he looked.

Stormo's testimony tended to show that when he crossed the Northwestern track going west, at point C, he looked both ways, north and south, along the Great Northern Railway track; that he could see south along the track, probably 700 feet, and that no train was in sight in that direction; that he could see the Northwestern track about 100 feet beyond Kemp Ave., and about the same distance along the Great Northern; that he proceeded westward on First Ave., at a speed of five or six

miles an hour, and when within 300 feet of the Great Northern track, at the point indicated as "D," he again looked north and south along the Great Northern track, but could see no train; that there were some rigs and an auto on the west side approaching the Great Northern crossing from the west, which he thought he might meet at the crossing; that the Great Northern track is on a grade about six feet higher than the general level, requiring a steep rise of the street, where it passes over the track; that he last looked south along the Great Northern track from point "D" on First Ave., and did not again look south, because he knew where the railroad crossing was, and had never seen a train coming fast, from that direction; that when the front wheels of the auto were within two or three feet of the railroad track, at the crossing, he saw the end of the box car, 15 or 20 feet distant, being backed down on him; that it was then too late to stop the automobile; that he put on all the power, and just got past the middle of the track, when the box car struck the auto, injuring the auto and himself; that he heard no whistle blown nor bell rung, nor sound of the train before the accident; that the automobile ran very smoothly and was the quietest machine he ever rode on; that the last time he looked for the train on the Great Northern track, was when he was 300 feet away. There was conflicting evidence as to the speed at which the train was moving at the time of the accident. The plaintiff's evidence tends to show a speed of 10 or 20 miles an hour; that of the defendant 4 to 6 miles an hour. An ordinance of the city of Watertown prohibiting the running of locomotives or cars in the city limits, at a greater speed than six miles an hour, was also put in evidence by plaintiff.

Youngquist, plaintiff's witness, testified that he was going east in his automobile on First Ave., near the point of the accident, and stopped west of the crossing to let the cars pass; that it was a still morning, and his attention was attracted by the puffing of the engine and the smoke going straight up; plaintiff also introduced several witnesses who testified that they were in a position to hear, but did not hear any whistle or bell, until the train was from 75 to 200 feet from the crossing, when several short whistles were blown.

Defendant's engineer testified that the engine was equipped

with an automatic air bell ringer which rang all the time the train was moving on the Great Northern track; that he stopped and whistled about 100 feet south of where the Great Northern crosses the Northwestern, near Kemp Ave., and whistled right after crossing the avenue, and again gave a danger whistle, just before the accident; the fireman on the train testified that the locomotive was equipped with an automatic air bell ringer, that he oiled the bell that morning, and that it rang all the time while the train was proceeding north on the track; that when they came to the crossing at Kemp Ave., they stopped and picked up the brakeman; that the engineer gave the crossing whistle, gave the road whistle, and again, near the time of the accident, the danger whistle; that he was on the left side of the engine, and saw plaintiff's auto from the time it crossed the Northwestern track on First Ave.; that when near the Great Northern track, plaintiff slackened speed and looked at the witness; that witness thought Stormo intended to stop, but that Stormo looked toward the car and engine, and appeared to think he could make the crossing; that when the engineer saw him making his run to cross the track, brakes were applied, the engine reversed, and everything done that could be, to avoid the accident. The conductor gave similar testimony. Some ten other witnesses on behalf of the defendant testified that they heard the bell ring and the whistle blown, substantially as testified to by the members of the train crew. The evidence was conflicting as to every material fact, except the one fact that the plaintiff Stormo, as he approached the crossing of the Great Northern track, did not look south in the direction of the approaching train, at any time after he was within 300 feet of the crossing.

[1] The finding of the jury upon conflicting evidence as to defendant's negligence, was in favor of plaintiff, and upon a motion for direction of a verdict, this court must assume that the facts were as alleged by plaintiff.

[2] It is contended by appellant that the plaintiff as a matter of law, was guilty of contributory negligence, in failing to look in the direction of the approaching train at any point within 300 feet of the crossing, and that its motion for direction of a verdict should have been sustained.

It must be assumed therefore, that the employees of defendant failed to blow the whistle or ring the bell as the cars approached the crossing where the accident occurred. In this connection appellant contends that the testimony of plaintiff's witnesses that they did not hear the bell or whistle, is not sufficient to overcome positive testimony of many unimpeached and disinterested witnesses that they heard the whistle and bell.

[3] It is appellant's contention that the evidence of plaintiff's witnesses as to the approach of cars on the Great Northern track, the ringing of the bell and the blowing of the whistle is purely negative, and raises no conflict of evidence which would justify submission of the facts to the jury.

"Evidence is positive when a witness states that an event did or did not occur, or that a certain matter is or is not so. It is negative when he in effect says; that so far as he knows, the event did not occur or that he did not see or hear a certain thing." 9 Enc. of Evi. 865-1. Id. 865 * * * 2: "Where the opportunities for knowledge of two witnesses were the same, and the attention of both was equally engaged, the testimony of one stating that the event did not occur is, considerations of credibility being laid aside, equal to that of the one stating that it did occur." Id. 865. "Negative testimony within the meaning of the term as it is used here, must in order to have any weight as evidence, tend to contradict positive testimony of the other party." Id. 866. "Negative testimony does not contradict unless it appears that the witness was in such a position and was giving such attention to the matter, that he might reasonably be expected to notice it." Chamberlayne, Modern Law of Evidence, §§50, 1757.

A great number of decisions may be found which hold in effect that the testimony of a witness that "he did not see," or "did not hear," under circumstances which show that the witness was not in a position where he must have seen or heard, or was not giving such attention to the matter that he might reasonably be expected to have seen or heard, is entitled to no weight in the presence of affirmative evidence, and does not create a conflict of evidence justifying a submission of the question to the jury as one of fact.

Culhane v. N. Y. Cent. & H. R. R. Co. 60 N. Y. 133; Mc-

Keever v. N. Y. Cent. & H. R. R. Co. 88 N. Y. 667; Wickham
v. C. & N. W. R. Co., 95 Wis. 23, 69 N. W. 982; Ives Administra-
trix v. Wis. Cent. Ry. Co., 128 Wis. 357, 107 N. W. 452; Frank
v. Pa. R. Co. (N. J. Sup.), 55 Atl. 691; Eissing v. Erie R. Co., 73
N. J. Law 343, 63 Atl. 856; Smith v. N. Y. Cent., H. R. R. Co.,
41 App. Div. 614, 58 N. Y. Sup. 63; Wellbrock v. Long Is. R. Co.,
31 Misc. Rep. 424, 65 N. Y. Sup. 592; Jones v. Lehigh & N. E.
R. Co. 202 Pa. 81, 51 Atl. 590; Keiser v. Lehigh Val. R. Co., 212
Pa. 409, 61 Atl. 903, 108 Am. St. Rep. 872; Bohringer v.
Campbell, 154 App. Div. 879, 137 N. Y. Sup. 241; Clark v. N. Y.
Cent. & H. R. R. Co., 17 Misc. Rep. 113, 40 N. Y. Sup. 730;
Hintze v. N. Y. Cent. & H. R. R. Co., 149 App. Div. 217, 133
N. Y. Sup. 687.

On the contrary, where witnesses who were sufficiently close to
the train to have heard a whistle, or bell if it had been rung,
testified that they heard neither whistle nor bell, the evidence
was held sufficient to justify the finding of the jury, that neither
bell nor whistle was sounded. Westervelt v. N. Y. Cent. & H. R.
R. Co., 86 App. Div. 316, 83 N. Y. Sup. 827.

In Mackerall v. Omaha & St. L. Ry., 111 Ia. 547, 82 N. W. 975,
where plaintiff testified he heard no signals, and other witnesses, in a
situation to hear, without their attention being diverted, testi-
fied that they heard neither bell nor whistle before the accident,
the court held that such evidence was not merely negative, but
raised an issue of fact for the jury.

In Whaley v. Vidal, 27 S. D. 627, 132 N. W. 242, we think
the same rule was recognized, when this court said:

"There was evidence tending to corroborate the engineer
and fireman, that the whistle was blown and the bell rung be-
fore the train reached the crossing, but in view of the fact that
neither Lysle Rowe nor his wife, heard any bell or whistle,
there was at least a conflict in the evidence upon that subject."

In Jones on Evidence, Civil Cases, it is said:

"It is a general rule of evidence that affirmative testimony
is stronger than negative; in other words, that the testimony of a
credible witness that he saw or heard a particular thing at a par-
ticular time or place, is more reliable than that of an equally cred-
ible witness who with the same opportunities testified that he did
not see or hear the same thing at the same time and place. * * But

the rule that positive testimony is of greater weight than negative has some important exceptions and it should never come in conflict with the general rule that the weight of the testimony should be left to the jury. . Such testimony is admissible and, together with corroborating circumstances, may outweigh positive testimony. As will be seen from the cases already cited, this question of the weight to be given to negative testimony often arises in railroad and other accident cases where it is claimed that signals were not given. In such cases, the question is purely for the jury, and it has often been held that negative evidence was sufficient to sustain the verdict."

The statement that negative evidence is sufficient to carry an issue to the jury, perhaps should be subject to the qualification that it must be such as to be contradictory of the opposing evidence.

"If the attention of the witness is especially directed to the train and its signals, and at the same time a distinct impression is made upon his mind that the signals are not given, his testimony (that he did not hear them) is in every particular as trustworthy, though negative, as would be the evidence of another witness similarly situated, affirming that the signals were given." Chicago R. Co. v. Stepp, 164 Fed. 785, 90 C. C. A. 431, 22 L. R. A. (N. S.) 350; Flennor v. Ore. Short Line R. Co., 16 Ida. 781, 102 Pac. 897.

"And a witness may be in any conceivable attitude of attention or inattention which will give his evidence value or leave it with little or no weight; but where his position is such that the sound would have been likely to attract his attention, if the bell had been rung, his failure to hear it is some evidence that there was none rung."

Menard v. Boston R. Co., 150 Mass. 386, 23 N. E. 214; Slattery v. N. Y. Cent. R. Co., 203 Mass. 453, 29 N. E. 622, 133 A. S. Rep. 311; Daniels v. N. Y. N. H. & H. R. Co., 183 Mass. 393, 67 N. E. 424, 62 L. R. A. 751; Gibson v. Bessemer R. Co., 226 Pa. St. 198, 75 Atl. 194, 27 L. R. A. (N. S.) 689, 18 Ann. Cas. 535; Chesapeake etc. R. Co. v. Hawkins, 124 S. W. 836 (Ky.).

In Foley v. N. Y. Cent. & H. R. R. Co., 197 N. Y. 430, 90 N. E. 1116, 18 Ann. Cas. 631, the court holding the evidence in that case to be purely negative, said:

"It must appear that they were looking, watching, and listening for it; that their attention was directed to the fact, so that the evidence will tend to some extent, to prove the negative."

Plaintiff's testimony tends to show that he was looking and listening for trains on both roads when approaching the crossing. He was in a position where he could have seen or heard an approaching train. His testimony was that he neither saw nor heard a train or any signals. He was corroborated to some extent by other witnesses. We think this evidence required the submission of the issue to the jury.

[4] The credibility of witnesses and the weight and preponderance of evidence were for the jury and, under the settled rule of law, this court is not permitted, when there is a substantial conflict of evidence, to disturb their decision upon controverted questions of fact. We are bound, therefore, to assume, as found by the jury, that the defendant's employees failed to ring the bell or sound the whistle as the train approached the crossing at which the accident occurred.

The remaining question is whether plaintiff, as a matter of law alone, was guilty of contributory negligence which would require direction of a verdict, by reason of his failure to look in the direction whence the train approached, at any time after he was within 300 feet of the crossing. He testified that when within that distance, he looked south, and could see something like 850 or 900 feet down the track, and that he neither heard nor saw any approaching train, and that he was traveling at a speed of five, six or seven miles an hour, as he approached the crossing. Assuming that defendant's track was clear to the south for a distance of eight or nine hundred feet, and that plaintiff, although looking and listening, neither saw nor heard cars approaching from the south, the question whether, under all the circumstances, he was guilty of contributory negligence, in assuming that no cars were approaching from that direction, and attempting to proceed over the crossing, without again looking south, we think was a question of fact properly submitted to the jury.

In Winey v. C. M. & St. P. Ry. Co. 92 Ia. 622, 61 N. W. 218, the court held that, *under any conceivable circumstances,* it was error

to instruct the jury that it was the duty of one to look and listen for approaching trains at all points on his passage across the track, and that his failure to do so, was contributory negligence which would bar recovery. The court said:

"The rule no doubt is, that if the traveler, having looked and listened, without seeing or hearing an approaching train, within a reasonable distance of the crossing, is, by reason of the neglect of the railroad company to blow the 'statutory' whistle, run upon and injured, liability attaches therefor."

In Harper v. Barnard, Receiver, 99 Ia. 159, 68 N. W. 599, in announcing the same rule, the court said:

"Plaintiff was bound to exercise the care that ordinarily careful, prudent persons would exercise under the same circumstances. While he had no right to proceed without looking and listening, upon the assumption that no train would pass from either direction, he did have the right to proceed, upon the assumption that the signals for highway crossings, required by Sec. 2003, of McClean's Code, would be given. * * * The negligence charged against the defendant was a failure to give these signals and by their verdict, the jury must have found that they were not given, and in view of this fact, and the evidence as to the care exercised by the plaintiff, in twice stopping and listening, and in looking both ways, we think the jury was warranted in finding that he was not guilty of contributory negligence."

In Moore v. C. St. P. & K. C. Ry. Co., 102 Ia. 595, 71 N. W. 569, the court said:

"The contention is that he did not look at the time and place when and where the exercise of ordinary care required that he should have looked and listened. * * * We do not think it should be said as a matter of law, that plaintiff was guilty of negligence in not again looking westward, after he passed the point sixty feet south. He had looked westward at Shaw street, and from the sixty-foot point, and saw nothing approaching, was listening and heard nothing. It was his duty to look east as well as west, and he did so. While we do not say that the plaintiff was not negligent, we do not think that it should be said as a matter of law, that he was. Whether in view of all the circumstances under which he acted, he was negligent, is a

question about which we think men may honestly differ, and therefore one that should have been submitted to the jury."

In Mackerall v. Omaha & St. L. Ry., 111 Ia. 547, 82 N. W. 975, the plaintiff, approaching a crossing, looked and listened, when 100 feet from the railway, without seeing or hearing a train. The court following the Winey case, held that plaintiff could not be considered guilty of negligence as a matter of law, in failing to again stop, look and listen, saying:

"Under the circumstances disclosed, it was for the jury to say whether the plaintiff stopped within a reasonable distance from the track, or was bound in the exercise of ordinary care, to do so again within the 100 feet."

Renwick v. N. Y. etc. R. Co. 36 N. Y. 132. In White, Personal Injuries on Railroads, Vol. 2 § 1014, the rule is stated:

"And where the evidence shows that the traveler did stop and listen for the train, it is generally held, under all the evidence, a question for the jury, whether this was a proper place to listen for the cars, and the traveler will not be held guilty of negligence, as a matter of law unless the evidence is all one way, to the effect that it was not a proper place to stop."

The care which a person who crosses a railroad track in a city, is required to use, as well as that which the company is required to use, varies with the surrounding circumstances and is a question of fact for the jury.

Texas & P. Ry. Co. v. Code, 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1133, 67 Fed. 71, 14 C. C. A. 310; St. L. & S. F. Ry. Co. v. Knowles, 6 Kan. Ap. 790, 51 Pac. 230; Garran v. Mich. Cen. Ry. Co., 144 Mich. 26, 107 N. W. 284. We think the trial court did not err in overruling appellant's motion for a directed verdict.

[5] Appellant assigns as error the refusal of certain instructions. The instructions given are set forth in full in the record. The instructions requested, we think, are fully covered by instructions given, and appellant could not have been prejudiced by the refusal of the trial court to give the requested instructions. Appellant also assigns as error certain portions of the instructions given by the court. We have carefully examined the instructions given, and are satisfied that, taken as a whole, they correctly and fully state the law of the case, as announced in this opinion.

It was unnecessary thus fully to consider the questions presented on this appeal except for the aid it may give the trial court, in view of the fact that a new trial must be grannted because of error in the exclusion of material evidence.

[6, 7] Mr. Hauff, who was one of the plaintiffs, was called as a witness on behalf of defendant. Among other things, he was asked by appellant's counsel whether, shortly after the accident, he did not have a conversation with his partner, Stormo in which Mr. Stormo, in substance stated to him, "that this thing would not have happened, if he had held the wheel, but that Burns was holding the wheel while he was putting on his automobile gloves." The question was objected to as incompetent, improper cross-examination, and not proper impeachment, which objection was sustained, and appellant assigns this ruling as error. The record purports to show that Hauff was called as a witness, under Chap. 72, Laws of 1909, "for cross-examination." This court had occasion to consider this statute in the case of Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 889. In that case it is said:

"The main purpose of this statute is to permit an adverse party to be called as a witness to prove, or to be interrogated concerning, facts material to the case of the party calling him, and that such witness may be called to prove a single material fact or any number of material facts, even the whole case. The facts as to which the party calling such witness may desire to examine him are wholly within his discretion. * * * A witness who is a party to the action is therefore called the same as any other witness, to prove certain facts, and not for cross examination."

But because he is deemed an adverse witness, the statute provides that the mode in which he is examined may be that ordinarily employed in cross-examination. The whole case may be thus fully and minutely investigated, and objections on the ground of materiality are not favored. If the evidence sought to be elicited from the witness Hauff, was material, it was clearly erroneous to sustain the objection, on the ground that it was not proper cross-examination. Is the evidence sought to be elicited by this question, competent or material?

[8] The precise issue decisive of the case, as submitted to the

jury, was whether Stormo was guilty of contributory negligence which would bar plaintiff's right of recovery. Plainly the purpose of this question was to elicit evidence of statements or admissions by the plaintiff Stormo, from which an inference of negligence on his part, might be drawn by the jury, namely: that while approaching the crossing, he (Stormo) had surrendered control of the machine to his passenger, Burns, and was himself engaged in putting on his automobile gloves, at the time, when, if he himself had retained control of the automobile, the accident would not have occurred. It is true, no offer of proof was made, but the question itself, disclosed the materiality of the evidence sought to be elicited, and no offer of proof was necessary. It is impossible for this court to determine what effect such evidence, if received, may have had in determining the verdict of the jury. We are clearly of opinion the exclusion of this evidence was reversible error, for which a new trial must be granted.

WHITING, J.    While I concur in the conclusion that the judgments and orders appealed from should be reversed, in the view that it was reversable error to sustain the objections interposed to the questions asked the witness Hauff, and in the holding as to the rule of law relating to the relative value and force of affirmative and negative testimony, yet I am forced to dissent from the statement that this court is bound to assume "that the employees of defendant failed to blow the whistle or ring the bell as the cars approached the crossing where the accident occurred." Conceding that ordinarily the negative testimony of one who swears that he attempted to ascertain the happening or non happening of a certain thing, is entitled to the consideration of the jury upon the question of whether such thing did happen, yet Stormo's testimony that he heard no whistle nor bell was entitled to no consideration whatsoever as proof that the whistle did not blow nor the bell ring for the reason that he swore he heard no whistle whatsoever and it stands conceded by three of plaintiff's own witnesses that the danger whistle did blow. The only effect of Stormo's testimony on this point should have been to discredit him before the jury when it came to consider his testimony that he did not see the engine and cars approaching.    That Stormo was knowingly and un-

excusedly attempting to beat the engine and car to the crossing is too apparent for any question to arise thereon.

POLLEY, J. I concur in the views expressed by Whiting, J.