SMITH, Superintendent of Banks, Appellant, v. GABLE, et al, Respondents.

(230 N. W. 28.)

(File No. 6781. Opinion filed March 31, 1930.)

*Roy E. Willy,* of Sioux Falls, *F. B. Morgan,* of Wagner, and *T. B. Thorson,* of Pierre, for Appellant.

*G. M. Caster,* of Lake Andes, and *L. E. Corey,* of Wagner, for Respondents.

MISER, C. This appeal is from a judgment and order denying a new trial in an action wherein the superintendent of banks seeks to set aside, as a fraudulent conveyance, a deed by L. M. Gable to Myrtle Gable, his wife, one of the respondents herein.

The trial court found as follows: Wagner State Bank suspended business on September 26, 1925. An assessment of 100 per cent against the stockholders of the bank according to section 8937, R. C. 1919, was ordered. L. M. Gable owned shares of the par value of $2,000. On April 29, 1926, L. M. Gable executed the deed in question. It conveyed 240 acres valued at $18,000 and subject to a mortgage of $10,500. The consideration named was "one dollar and other valuable consideration." The grantor had acquired this land in parcels of 40 acres each, the first purchase in 1904, the last in 1916. The grantee had "contributed the sum of $6,033.33 for the purchase and improvement of the lands"; and the money so contributed, with interest, amounted to the full value of the equity in the real estate. On April 29, 1926, the total liabilities of L. M. Gable amounted to $4,029.98, and he owned other real estate and personal property of the fair, reasonable, salable value of $5,208.48. L. M. Gable was not insolvent at the time of the execution of the deed in question, and, in conveying this land to Myrtle Gable, he acted in good faith and without intent to hinder, delay, or defraud his creditors. On October 14, 1926, L. M. Gable died, leaving a will giving to his wife, Myrtle Gable, respondent herein, all his property and naming her as executrix. In November, 1926, S. L. Gable, brother of L. M. Gable, was appointed administrator with the will annexed and as such is a party defendant and respondent. On these findings the trial court entered judgment dismissing appellant's complaint.

L. M. Gable, the grantor in the deed to the 240 acres, which deed is sought to be set aside as fraudulent, and S. L. Gable, now administrator of L. M. Gable's estate, owned jointly a lot in Wagner hereinafter referred to as lot 10. In his answer. S. L. Gable denies the insolvency of L. M. Gable on April 29, 1926. On December 23, 1926, S. L. Gable, as administrator, asked leave of the county court to sell L. M. Gable's half interest in lot 10. In his petition, he represented that at that time the estate was insolvent, and that L. M. Gable's half interest in lot 10 was worth $750. At the trial, to prove L. M. Gable solvent on April 29, 1926, the administrator testified that the whole interest in lot 10 was worth $3,000 on April 29. Lot 10 was sold in February or March, 1927, for $2,100, partly cash and partly in satisfaction of S. L. Gable's debt. The trial court found $1,050 as the value of L. M. Gable's half interest on April 29, 1926. In his petition for leave to sell, the administrator itemized the personal estate which had come into his hands and fixed its value at $1,308, the value fixed by the appraisers. In this petition Myrtle Gable joined. Certain live stock was appraised at $385. At the trial the administrator testified that this live stock was worth $925 on April 29. As part of the administrator's cross-examination appellant offered to prove that the administrator had sold the live stock to his codefendant at private sale in December, 1926, at the figures shown in the appraisement. Respondent objecting to this offer on the ground that the time of sale was too remote, offer to prove was denied. If a sale in February or March, 1927, was not too remote to be accepted as a criterion of value of lot 10, no reason appears in the record why a sale of live stock in December, 1926, should be more remote. The offer presented an inquiry, in effect, whether property which the witness valued at $925 as of April 29 had not been sold by him the following December to his codefendant for $385. It has been held that the price at which the personalty actually sold subsequent to the time in issue is some evidence of its value at the time in issue if not too remote. Jones on Evidence (2d Ed.) p. 1320, § 704; Ann. Cas. 1916D, 799; 22 C. J. 185.

But it is not necessary to determine whether the proof offered would have been admissible in direct examination. It was offered in cross-examination of a witness who was a brother of the deceased grantor, the brother-in-law of the grantee, a witness who

placed a value of $200 on a tractor and plows which no other witness valued at over $75, a witness who placed a value of $150 on certain shares of stock which his codefendant says were given to her by her husband in the summer of 1926 as being then of no value. As reported in Holdridge v. Lee, 3 S. D. 134, 52 N. W. 265, 266, a witness had testified to the value, at the time of conversion, of certain horses which he had owned a year before that time. On his cross-examination he was asked what he got for each of the horses when he sold them. After reviewing the facts showing his interest, this court said: "Evidently the object of this testimony was not to prove the value of the horses a year before as a measure for plaintiff's damages, but to show a fact that might bear upon the fairness or candor of the witness in his expressed judgment of what they were worth at the time of the taking. The subject of the inquiry was not so much the horses as the witness. It would not have been proper evidence on direct examination, but we think was allowable on cross-examination." This is in keeping with the rule that greater liberality should be exercised in determining relevancy on cross than on direct examination. Horwitz, Jones on Evidence, § 826, vol. 5, p. 128; Jones Ev. (2d Ed.) § 2343, p. 4586.

Appellant also assigns as error the refusal of the trial court to permit him to call the administrator as an adverse witness under section 2714, R. C. 1919, and examine him as if under cross-examination. Whether when, at the beginning of the trial, appellant sought to so examine the administrator, it was error to deny appellant's claim of right, we do not decide. No useful purpose would now be served in supplementing what has already been said by this court in Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 889; Hauff & Stormo v. S. D. Cen. Ry. Co., 34 S. D. 183, 147 N. W. 986, and more recently in Larson v. Nelson, 54 S. D. 184, 223 N. W. 41; Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585; and Walworth County Bank v. Taylor, 55 S. D. 24, 224 N.W. 929. His testimony, some of which has been heretofore referred to, and the testimony of his codefendant clearly showed before the conclusion of the trial that he was not merely a nominal party and disinterested administrator in this litigation. It is apparent that he was actively interested in protecting the interests of his sister-in-law, the grantee in the deed sought to be set aside. She herself testi-

fied that the first she knew of the deed was when the witness brought it to her already signed and recorded. The witness took the acknowledgment of the grantor. But this testimony was not before the court when the ruling was made, nor is any subsequent ruling on this question assigned as error. It is possible, however, that the learned trial judge might have reached a different conclution as to the solvency of the grantor had appellant not been unduly restricted in his cross-examination of, and in his right to call as an adverse witness, the defendant administrator, who was the principal witness for the defense on the question of solvency.

As heretofore stated, the trial court found that Myrtle Gable, the grantee in the deed, had "contributed the sum of $6,-033.33 for the purchase and improvement of the land," and that the money so contributed, with interest, amounted to the full value of the equity in that 240-acre tract. In Churchill & Alden Co. v. Ramsey, 50 S. D. 73, 208 N. W. 406, 407, this court said: "In view of the relation between husband and wife, the law does not imply, merely from the receipt by the husband of the proceeds of sale of property standing in the wife's name, a promise on his part to repay or replace the same as it might between strangers. There must be either an express promise to repay, or such attendant circumstances as affirmatively establish the fact that the husband and wife in the particular transaction dealt with each other as debtor and creditor."

In the case at bar the mere fact—if it be a fact—that the wife contributed $6,033.33 for the purchase and improvement of the land is not enough to show that husband and wife dealt with each other as debtor and creditor. But respondent calls attention to the more recent decision of this court in Meloy v. Kell, 220 N. W. 863. There is nothing in the latter decision inconsistent with the decision in Churchill & Alden Co. v. Ramsey, supra, cited and followed therein. In the case of Meloy v. Kell, the trial court found, on facts in many respects different from those in the case at bar and on evidence that was competent, that the grantee therein paid to her husband full consideration for the premises. A careful review of the entire record did not permit this court to say that the finding was without adequate support in the evidence. In the case at bar, the finding that the grantee merely "contributed" for the purchase and improvement of the land an amount which, with in-

terest, equaled the equity therein, is not sufficient to support the judgment. The testimony is uncontradicted that, long prior thereto, L. M. Gable had given to Myrtle Gable the family home worth $7,000; that, when his estate was insolvent in December, 1926, she had property, exclusive of the property in question, valued at $14,000; that he paid the taxes on this property and even paid the taxes on the property in suit after conveying it to his wife.

■ For another reason also the judgment must be reversed. Practically all the testimony as to the transactions whereby respondent Myrtle Gable "contributed" this sum of $6,033.33 to her husband was that of Myrtle Gable herself. This was incompetent under subdivision 2 of section 2717, R. C. 1919, which states the grounds of exclusion as follows: "In civil actions or proceedings by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered or order entered for or against them, neither party nor his assignor nor any person who has ever had any interest in the subject of the action adverse to the other party, or to his testator or intestate, shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party."

The defendant S. L. Gable was the administrator with the will annexed and was šued as such. The defendant Myrtle Gable, in addition to being the executrix named in the will and sole beneficiary thereunder, was the grantee in the deed sought to be set aside as being in violation of chapter 209, Laws of 1919, the Uniform Fraudulent Conveyance Act. If the court finds that such conveyance should be set aside, the effect of a decree will be to place in the hands of the administrator respondent property with which to pay the claim of appellant. To a considerable extent this will come from respondent Myrtle Gable. Under section 3309, R. C. 1919, it is made the duty of an administrator to sue to recover real estate conveyed by his intestate with intent to defraud his creditors. The claim of Myrtle Gable is no less adverse to the estate of L. M. Gable, deceased, because the administrator appears herein as a codefendant.

"The words 'adverse party' are not limited to the adverse positions of plaintiff and defendant. These words have been held to affect any party, whether plaintiff or defendant, whose interests are

actually adverse to those of another party to the action who appears in the capacity of * * * administrator. * * * In other words, the position of the names on either side of the record is not the determining factor as to the adverseness of the interest claimed or defended to that of the representative of the decedent or incompetent." Jones Ev. (2d Ed.) § 2233, p. 4276; Horwitz, Jones Ev. § 773, p. 631.

For a case in many points identical, see Adler v. Hellman, 55 Neb. 286, 75 N. W. 877, citing Grier v. Cable Adm'r et al, 87 N. C. 377, wherein the court said: "It is plain if a suit be brought under the authority of the act, by the personal representative against the * * * fraudulent alienee of the land, for its conversion into assets, the defendant could not be heard to testify to a communication or transaction between himself and the deceased in support of his own title and to defeat the plaintiff's action, and we see no reason why the statutory disability would not apply with equal force to such testimony proceeding from the defendant asserting title in himself, when the creditors sue both him and the personal representative, to enforce upon the latter a neglected legal duty. Though necessarily associated as defendants, their relations are adversary, inter sese, as to the subject matter of the action, as truly and for all practical purposes, as if they were arrayed in opposition upon the record; and certainly no prejudice ought to accrue to creditors because they coerce him to do what the obligations of his assumed trust required him to do without coercion."

Without unduly prolonging this opinion, we cannot discuss—and because there must be a new trial, it is not necessary to discuss—the several other assignments of error involving, as they do, the sufficiency of the evidence to support findings as to value of assets.

The judgment and order appealed from are reversed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.

BROWN, P. J., concurs in result.